**In re the MARRIAGE OF Daniel L. McFARLAND and Constance J. McFarland.**

**Upon the petition of Daniel L. McFAR-LAND, Appellant-Cross-Appellee,**

**and concerning Constance J. McFAR-LAND, Appellee-Cross-Appellant.**

No. 2–57870.

Supreme Court of Iowa.

Feb. 18, 1976.
Rehearing Denied April 12, 1976.

Daniel L. McFarland, pro se.

O'Donohoe & O'Connor, New Hampton, for appellee-cross-appellant.

Heard by REYNOLDSON, Acting C. J., and RAWLINGS, LeGRAND, UHLEN-HOPP and McCORMICK, JJ.

McCORMICK, Justice.

This is an appeal and cross-appeal from the child custody and economic provisions of a dissolution decree. We modify and affirm.

Five questions are presented. They require us to decide whether the trial court erred (1) in awarding child custody, (2) in ordering a division of property and alimony, (3) in fixing child support, and (4) in failing to assess petitioner with respondent's trial court attorney fees. In addition, we must pass upon respondent's application for attorney fees in this court.

Petitioner Daniel L. McFarland and respondent Constance J. McFarland were married August 21, 1955. At the time of trial they had been married more than 19 years. Daniel was 41 and Constance was 39. They have three children, Kenneth, who will be 18 in May of this year, Susan, who will be 14 in April of this year, and Mary, who will be 9 in March of this year.

Daniel, a college graduate, entered the air force after the marriage and remained on active duty until 1959. He subsequently joined the naval reserve and traveled to Chicago one weekend each month for reserve meetings. After completing his tour of active duty, Daniel obtained some additional education and then taught school for four years, two years at Nashua and two years at Fayette. The family lived in Fredericksburg during this period. He then worked as an insurance adjuster in the Cedar Rapids area, first for Farm Bureau and later for Hunt Claim Service. In 1967 Daniel moved the family back to Fredericksburg. Since then his principal occupation has been conducting a cattle operation and farming his father's 400 acre farm, although he also operates his own adjustment service. Daniel's parents deeded him three acres of the farm upon which he arranged to have a new home built. In 1971 the family moved into the new home.

At the time of trial Daniel contended the couple had a net worth of about $1325, based upon assets valued at $89,325 and liabilities estimated at $88,000.

Constance, a high school graduate, grew up in Fredericksburg. She had some office skills and worked in the county treasurer's office prior to the marriage. She was employed outside the home for a short time when Daniel was in the air force but not after Kenneth was born.

Daniel's attraction to other women led to the loss of at least one of his teaching jobs and probably one of his adjusting jobs. It also led to the demise of his marriage. Prior to January 1974 he became involved with a nurse with whom he had become acquainted through his naval reserve activities in Illinois. Letters from the nurse to Daniel received in evidence show they decided to get married as soon as Daniel could dissolve his marriage with Constance. Daniel revealed his intention to Constance in January 1974. During a period when only he was represented by counsel he conducted discussions with Constance and with the children regarding the terms upon which the marriage would be terminated. At one point Constance signed a stipulation prepared by Daniel's lawyer which would have given her an $11,500 lump sum property settlement and would have given Daniel all other assets and debts and custody of the three children.

After psychological counseling, Constance obtained a lawyer and soon repudiated the stipulation. Daniel continued to attempt to negotiate the custody issue directly with Constance and often discussed the issue in the presence of the children, with an avowed purpose only of letting them participate in the decision.

At trial, by agreement of the parties, the trial court had an extensive off-the-record discussion with the three children. Several

witnesses testified to Constance's good qualities as a mother. Other witnesses said Daniel is a good father. Constance and Daniel each expressed a desire to have custody of the children. Daniel contended that the decisive factor should be the desirability of keeping the children on the farm, which he said they loved. He testified he thought Constance would move them to a metropolitan center which would make them unhappy and which would be less wholesome.

The trial court found neither parent unfit to have the children and placed temporary custody of Kenneth with Daniel and temporary custody of Susan and Mary with Constance, subject to review and final order in June 1975. The court believed the ephemeral nature of Daniel's prior romantic choices and the uncertainties regarding the home he might provide with a new wife, whose qualities were unknown to the court, justified the temporary custody order.

The court ordered Daniel to pay Constance a lump sum of $9000. Daniel was also ordered to pay $150 a month as alimony for ten years, then to terminate upon Constance's remarriage. He was ordered to pay $20 per week per child toward the support of his two daughters. Each party received personal belongings. Daniel received the home, most household goods, all farm machinery, and a truck. Constance received an automobile and a few household items. Daniel was ordered to pay all debts of the parties, and the parties were ordered to pay their own attorney fees.

I. *The child custody award.* Each party objects to the temporary custody award. Daniel objects on the ground he believes he should have been given permanent custody of all three children. Constance objects on the ground she believes the award should have been permanent. She does not seek to upset the order awarding Kenneth's custody to Daniel, recognizing that in view of Kenneth's age it would not be realistic to do so.

▮ The parties have complicated our review of the custody issue by agreeing to private unreported interviews of the children by the trial judge. We must review the case de novo. Without a record of the judge's interviews, we do not have the same information as the trial judge and our review is hindered. We have previously disapproved the absence of record of such interviews. *Tschappat v. Kluver,* 193 N.W.2d 79 (Iowa 1971); *Conkling v. Conkling,* 185 N.W.2d 777 (Iowa 1971). We do so again, and we must also once again decide the custody issue without regard to any trial court findings premised upon the unreported interviews.

▮ After a de novo review of the record of trial testimony in light of the factors discussed in *In re Marriage of Winter,* 223 N.W.2d 165 (Iowa 1974), we believe custody of Susan and Mary was properly awarded to Constance. The girls are normal and healthy. Although they love both parents and both parents obviously love them, we believe their emotional, educational and other needs can be met better by Constance than by Daniel. He is aggressive and uncompromising. His personal example has not been good. Constance is more flexible and more willing to subjugate her personal wishes to the best interests of the children. She, more than Daniel, has attended closely to the routine needs of the children and can be expected to continue to do so. Her relationship with the children has been good. Daniel's proposed remarriage created uncertainty about the kind of home he would provide the children. Overall, Constance has demonstrated more stability and maturity in her life than Daniel has in his. Acting upon probabilities and evaluating them based upon what has happened in the past, as we must in these cases, we agree with the trial court order placing the custody of Susan and Mary with their mother. We continue our disapproval of divided custody without good and compelling reasons for it, but we are convinced the award here should not be upset on that basis.

▮ We agree with Constance that the trial court order should be made permanent.

We have previously disapproved temporary orders like the one involved here. The reasons for doing so are explained in *Shipley v. Shipley,* 182 N.W.2d 125 (Iowa 1970). The uncertainties which led the trial court to defer entry of a permanent award in this case were not likely to dissipate in six months. Custody decisions are difficult, but we are committed to the principle that the status of children should be quickly fixed and thereafter little disturbed. *Miller v. Miller,* 202 N.W.2d 105, 112 (Iowa 1972).

We approve the trial court's award of Susan and Mary's custody to Constance, but we hold it should have been final. We modify the decree accordingly.

■ II. *Property division and alimony.* Neither party is satisfied with the property division, and Daniel argues the alimony award is excessive.

Since Constance was never involved in the business affairs of the parties, most of the information in the record regarding assets and liabilities of the parties comes from Daniel. It is sketchy and difficult to evaluate. He put a value of $40,000 on the house, $24,000 on cattle, $10,250 on breeding bulls, $9175 on farm machinery, and $5000 on a pickup truck. He testified to a mortgage of $26,000 on the house, a debt of $19,000 to his parents, a debt of $30,550 to a bank, and a debt of $4000 to a co-op. He also said his farm rental arrangement with his father required him to pay $2000 in real estate taxes and $4000 in rent. Constance put a value of $6000 on household goods; Daniel valued them at $3000.

Daniel's business and personal relationship with his parents led to considerable entanglement of his financial affairs with theirs. It appears he is a tenant on the family farm but a partner with his father in at least some aspects of his cattle operation. Income was run through various accounts, and it is impossible from the record to determine what part of it belonged to Daniel and what part of it to his father. The same questions surround Daniel's farm assets and liabilities. Against

this background is the fact he demonstrated through his teaching and claims adjustment work that he has considerably more income-producing capacity than he purports to be realizing from his farming activities. In addition, at a time when he was represented by counsel and Constance was not, he was willing and believed himself able to pay her a lump sum of $11,500 in settlement of their property affairs.

Constance contends the court erred in failing to award her the home and household goods.

Giving full consideration to the evidence in this case in light of the criteria in *Schantz v. Schantz,* 163 N.W.2d 398 (Iowa 1968), exclusive of consideration of fault, *In re Marriage of Williams,* 199 N.W.2d 339 (Iowa 1972), we believe the property division and alimony awards were right. However, we hold the periodic alimony should terminate after ten years not only upon Constance's remarriage but in the event of the death of either party. We modify the decree to add that provision.

■ We are reinforced in our conclusion regarding the property division and alimony award by the fact the trial court expected Constance to pay her trial court attorney fees and establish a household for herself and two daughters from all the amounts awarded, despite an order for only minimal child support. These amounts must be considered together in evaluating their individual sufficiency. They are neither made nor subject to evaluation in isolation from one another. *In re Marriage of Campbell,* 204 N.W.2d 638, 639 (Iowa 1973).

■ III. *Child support.* Constance contends the award of child support is inadequate. Although the award of $20 per week per child in support for Susan and Mary is low, we believe it is justified when considered in light of the fact the trial court undoubtedly believed Constance would use the money received in property division and alimony to provide a home for herself and the two girls. *Peters v. Peters,*

214 N.W.2d 151, 157 (Iowa 1974). The court also probably contemplated that it would be necessary for Constance to seek employment in order to assist in meeting her needs and those of the children. The award is equitable in the circumstances.

Support for each daughter shall terminate when she reaches age 18 unless the conditions in § 598.1(2), The Code, relating to education are met, in which event the obligation shall continue for such child until she reaches the age of 22 so long as those conditions exist. See *In re Marriage of Briggs*, 225 N.W.2d 911 (Iowa 1975). The decree is modified to add this provision.

■ IV. *Trial court attorney fees.* What we have already said presages our determination of Constance's complaint that the trial court should not have ordered her to pay her own trial court attorney fees. We believe the court considered the entire economic situation of the parties including the property division in arriving at its order. The court evidently intended that she pay her counsel's statement for $1420 from the lump sum award. We decline to interfere. See *In re Marriage of Beeh*, 214 N.W.2d 170, 176 (Iowa 1974).

V. *Attorney fees on appeal.* Constance has filed an application to require Daniel to pay her attorney fees for this appeal. An itemized statement shows her fee for the appeal to be $1020. This does not include costs advanced in her behalf in this court. In all the circumstances, we believe Daniel should pay the $1020 fee and all costs incurred in this court. It is so ordered.

Except as herein modified, the trial court decree is affirmed. Daniel shall have credit against his obligation under the decree from its date for the amounts of alimony and child support paid during the pendency of this appeal under order of this court. He shall also have credit for the $300 advanced to counsel for Constance for printing costs and other expenses.

Modified and affirmed.