In re the MARRIAGE OF Charlene Mildred KEHRLI and Wilbur Elmer Kehrli.

Upon the Petition of Charlene Mildred KEHRLI, Appellee,

and Concerning

Wilbur Elmer KEHRLI, Appellant.

No. 2–58257.

Supreme Court of Iowa.

May 19, 1976.

Ball & Nagle, Waterloo, for appellant.

Walter W. Rothschild and Frederick G. White, Waterloo, for appellee.

David Correll, Cedar Falls, for children.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

RAWLINGS, Justice.

Appeal by respondent contesting child custody and property division provisions of a marriage dissolution decree. We affirm.

The parties hereto, Charlene Mildred Kehrli (petitioner) and Wilbur Elmer Kehrli (respondent) were married September 11, 1962. Their two sons, Kendall and Chad, were born November 26, 1964 and May 9, 1971, respectively. At trial time Charlene was 32, Wilbur 36.

By decree entered March 27, 1975, petitioner was granted custody of the children and awarded one of three farms owned by the principal parties hereto.

Pertinent portions of the factual situation will be set forth as they relate to issues presented.

■ I. First entertained is respondent's claim to the effect he, not petitioner, should have been awarded custody of the minor children.

We have heretofore repeatedly expressed the numerous principles by which this court is instantly guided. They need not be here repeated. See e. g., *Schoonover v. Schoonover*, 228 N.W.2d 31, 33–34 (Iowa 1975); *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974); *In re Marriage of Bowen*, 219 N.W.2d 683, 687–688 (Iowa 1974); *In re Marriage of Forest*, 201 N.W.2d 728, 729–730 (Iowa 1972); *Wells v. Wells*, 168 N.W.2d 54, 60 (Iowa 1969).

Furthermore, no useful purpose will be served by attempting to relate the full array of testimony regarding custodial fitness of either petitioner or respondent. As trial court found, neither is all good or all bad, each being qualified to have custody of the boys.

For convenience and brevity we adoptively set forth, *infra,* pertinent findings below with regard to custodial suitability.

Petitioner, with whom the boys have been living since 1973, has a responsible business position in Waterloo. More to the point trial court determined:

"[Charlene] * * * has taken a commendable interest in the education of her children, has books and other educational materials for them, reads to them and engages in leisure-hour activities with the children such as picnicking, biking, and so forth. She kept an excellent home and prepared nutritional meals. Figuratively speaking, she would appear to be 'the clinically perfect mother.' "

On the other hand, sometime between 1970 and 1973 petitioner was involved in what appears to have been a nonrecurrent extramarital affair, though not in such manner as to reflect upon or adversely affect her children. And as trial court observed:

"[I]n spite of the expressed apparent obvious deficiencies in the petitioner as above related, the Court feels that her present ability to properly care for the children, at least at this time, and at their present tender years, and to devote requisite time to them is considerably greater than the respondent's, particularly without the necessity of constant babysitter supervision. Petitioner's testimony indicated, as corroborated, that she would be able to devote considerable of her time to the children and still engage in her work. Her hours of employment except for about one hour during the day would correspond approximately to the children's school hours, meaning that her personal presence and supervision would during the course of the year be considerably more possible than would respondent's. Petitioner is considerably more inclined to insist upon proper hours of rest, regular meals, and a systematic schedule for the children, than is the respondent."

Also in this vein the record reveals Charlene has been and is providing the children a home life which has for them been wholesome, happy and secure.

Turning now to respondent's position in the custodial field, the trial judge thus summarized the situation:

"[Wilbur's] drawbacks as a person having custody of the children are related to his extremely busy schedule, his long devotion to his business, leaving a limited time for the children, and his present inability to care for the children except through great reliance on hired full-time and part-time sitters. [Wilbur] did state a willing-

ness, however, to devote more time to his children in spite of his business operations."

Respondent's aforesaid in futuro assurance of extended parental activity, though commendable, is at best relatively speculative and conjectural. See *Schoonover v. Schoonover*, 228 N.W.2d at 34. Hopefully, however, he will fulfill this promise in every way reasonably possible during the liberal visitation periods accorded him. Such would undoubtedly be of inestimable value to father and sons.

Ultimately the trial judge concluded:

"If the Court were to base the custody decision purely on past conduct of the parties, the scales would be plausibly tipped in favor of the respondent. However, based upon all factors, particularly the present position of the parties and the children, the fact that both are basically loving parents, and the fact that the children have prior to the time of trial adjusted somewhat to the maternal home, the Court must factually determine that the children are better off if present custody is placed with the petitioner. The Court does not feel that the custody question is a matter of urban versus rural or male versus female, but a consideration of all elements, physical, emotional, moral and mental—as viewed in the present and based upon that consideration, the Court is of the opinion that the custody should be placed with the petitioner subject to liberal specified visitation as hereinafter set forth * * *. Finding that present custody should be placed with the petitioner as herein set forth, the judgment and decree will provide for a family counseling program in the best interests of said children."

Incidentally, this determination comports with the recommendation advanced by David Correll, who was appointed attorney for and has commendably represented Kendall and Chad. See *In re Marriage of Dawson*, 214 N.W.2d 131, 133 (Iowa 1974).

Although, as in many such cases, the question may be deemed close our de novo review leads us to hold the long range best interests of the two boys, Kendall and Chad, will be best served by remaining with their mother. Consequently, the controverted adjudication as to custody of said children shall stand.

II. Respondent next contends trial court erred "in the specific portion of the Decree dealing with property division wherein [petitioner] was given title to * * * 'Hoffman Farm' conditioned upon a lease to [respondent] for a period of 15 years."

Here again there is no need to reiterate pertinent well established guiding precepts. See *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968); *In re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972). See also *In re Marriage of McFarland*, 239 N.W.2d 175, 179 (Iowa 1976).

As a preface to our consideration of the involved problem a brief review of the factual background is essential.

At time of separation Wilbur and Charlene owned three farms. Their home place was purchased by Wilbur before marriage. Trial court took into consideration the value thereof before making a property distribution, with Charlene being allowed one-half the worth of marriage period improvements effected thereon. The "Scanlon Farm" was bought in 1972 on contract. A third, the "Hoffman Farm" was likewise contractually acquired in 1966 for $38,000, all but $8000 of which had been paid at trial time. This tract consists of 80 acres, valued at $80,000 by trial court and neither party contests the fairness thereof.

As heretofore evidenced Wilbur was awarded the home place and Scanlon farm, the Hoffman tract going to Charlene. By terms of the decree Wilbur may optionally retain possession of the Hoffman farm until Chad, then three, becomes 18 years of age. In other words, Wilbur was accorded the equivalent of an elective 15 year leasehold. This arrangement was apparently adopted by trial court in order to compensate Charlene, absent any alimony, for her contribution to the marriage and at the same time allow Wilbur, if so desired, to continue his hog-breeding operations at the present lev-

el. In return respondent lessee must pay all taxes, insurance and upkeep on the premises during the lease term. Charlene, as lessor, is to receive an annual rental of $3000, payable $250 per month. Wilbur is also required to satisfy the above noted $8000 encumbrance on the Hoffman farm.

■ Admittedly, "precedents are of little help in determining what is a fair division of assets between the parties to a dissolved marriage". *In re Marriage of Briggs,* 225 N.W.2d 911, 912 (Iowa 1975). We also informatively said in *Briggs,* 225 N.W.2d at 913:

"While [the husband's] accomplishments may have been more financially productive, this does not mean [the wife's] efforts as wife and mother were less important. Our law does not contemplate a division of property on a price-per-hour basis, as though marriage is a business venture. Husband and wife need not, during happy days, keep a ledger to prove his or her economic value should the marriage later founder. Cf. *Madsen v. Madsen,* 261 Iowa [476] 480, 154 N.W.2d [727] at 729 [(1967)]. The factors listed in *Schantz v. Schantz,* supra, were not intended to work with mathematical precision. They are simply criteria to help in arriving at a result which, as § 598.21 puts it, is 'justified.' "

■ In light of all the facts and circumstances we find nothing inequitable in the above noted property division.

Looking to the other side of the coin Wilbur suggests this alternative arrangement. Rather than awarding the Hoffman farm to Charlene, he proposes title thereto be vested in him so use of same may be continued as "an integral part of the purebred hog and farming operation." It is attendantly proposed he forthwith pay $20,000 to Charlene plus 15 annual interest-free installments of $4000, or an ultimate total of $80,000, fair market value of the land. Under Wilbur's plan, however, Charlene would not have benefit of the full amount awarded her for 15 years. Also, by virtue of current inflation and escalating land values, the ultimate result could be most inequitable to her.

It would also appear respondent, in resisting the aforesaid property division, overlooks the fact that under trial court's adjudication his hog-breeding project will remain intact, from a practical standpoint, if he merely elects to exercise the given leasehold option. Also, upon termination thereof Wilbur might continue occupancy of the farm in question provided he and Charlene can agree on terms. Alternatively, respondent may in the interim acquire replacement property from another source.

Trial court conceivably recognized petitioner's right to enjoyment of her contributions to the economic success of the marriage and respondent's desire to keep the three farm operation functionally intact. In any event the decree permits effectuation of this objective in a feasible manner.

Finally, Wilbur's speculative fear of future landlord-tenant problems between Charlene and himself may or may not be well-founded. Be that as it may, legal remedies are available if and when any such difficulty should materialize.

Our de novo review leads us to conclude the controverted property division must also stand.

III. Petitioner has caused to be filed an application for allowance of attorneys' fees in connection with this appeal. Trial court ordered respondent pay them $5000 to apply on their fees for legal services performed below. In support of said application her attorneys have here filed an itemized statement.

■ It is now ordered respondent shall, within three months from issuance of procedendo, pay to petitioner through the Black Hawk District Court Clerk's office, the sums of $2500 and $2250 to apply respectively on the fees of Mr. Rothschild and Mr. White, for services performed by them on

behalf of petitioner in connection with this appeal. See *In re Marriage of Peterson,* 227 N.W.2d 139, 143 (Iowa 1975). The above awards are in addition to the amount allowed by trial court.

IV. David Correll, appointed counsel for the involved children, has also here requested a fee allowance. Trial court awarded him $2444.65 which included costs advanced.

It is now ordered respondent shall, within three months from issuance of procedendo, pay to Mr. Correll $1000 through the Black Hawk District Court Clerk's office for services rendered on behalf of said children in connection with this appeal. That award is also in addition to the amount allowed by trial court.

AFFIRMED.