In re the MARRIAGE OF Judith S. CASTLE and Thomas L. Castle.

Upon the Petition of Judith S. Castle, Petitioner-Appellant Cross-Appellee, and Concerning Thomas L. Castle, Respondent-Appellee Cross-Appellant.

No. 3–65610.

Court of Appeals of Iowa.

Oct. 27, 1981.

David M. Nelsen of Nelsen & Folkers, Mason City, for petitioner-appellant-cross-appellee.

R. L. Stephenson of Beck, Pappajohn, Shriver & Stephenson, and Charles H. Levad, Mason City, for respondent-appellee-cross-appellant.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER, and JOHNSON, JJ.

DONIELSON, Judge.

The petitioner wife appeals and the respondent husband cross-appeals from the parties' dissolution decree. Petitioner challenges the economic provisions of the decree and requests attorney's fees on appeal. The respondent contends the parties' two children should have been placed in his custody or, in the alternative, in a joint-custody arrangement. Respondent also contends that if child custody to the wife is affirmed, his child support obligation should be reduced. We affirm.

Our review of this equitable proceeding is de novo. Iowa R.App.P. 4. Our responsibility is to review the facts as well as the law and to determine rights anew from the credible evidence on properly presented and preserved issues. *In re Marriage of Full*, 255 N.W.2d 153, 158 (Iowa 1977). While we give weight to the findings of the trial court, especially where the credibility of witnesses is involved, we are not bound by them. *In re Marriage of Novak*, 220 N.W.2d 592, 597 (Iowa 1974); Iowa R.App.P. 14(f)(7). As in all cases of this type, precedent is of little value and our decision must ultimately depend on the particular facts of this case. *In re Marriage of Kehrli*, 241 N.W.2d 923, 296 (Iowa 1976).

I.

The parties were married in 1964 and have two minor children, Jon age 14 and Tammi age 11. Petitioner is now 37 years old and respondent is 40 years old. Both parties have college educations and are employed at jobs that pay well.[1]

Respondent is presently manager of a family corporation which sells and rents academic caps and gowns. This work requires him to be away from home approximately 65 nights per year. Respondent concedes that because of his absences petitioner had primary responsibility for the children during most of the marriage, however, he claims to have altered his priorities so that he could give the children more of his time and attention if he were awarded custody.

The trial court awarded custody of the two children to petitioner, expressly rejecting respondent's request for joint custody. The court noted that petitioner was unwilling to agree to joint custody and that the evidence suggested the parties did not trust each other enough or communicate enough to succeed in joint custody. Respondent was ordered to pay child support of $250.00 per month for each child.

The trial court divided the parties' property as follows. Petitioner was awarded the family residence, valued between $54,000.00 to $58,000.00, subject to a $4,700.00 mortgage and also subject to petitioner making a $10,000.00 cash payment to respondent. She also received her savings, household goods and an automobile for a total net award of $52,900.00.[2] Respondent was awarded all his stock in the family corporation, an automobile, various savings, retirement and insurance accounts, and $10,000.00 cash from petitioner. His total net award, in his estimation, was $88,757.00.[3]

The trial court directed each party to pay their own attorney's fees for the trial, but

---

1. Petitioner takes home $961.00/month and respondent takes home $1,526.00/month.

2. Using respondent's figures, petitioner's net award is $60,900.00.

3. Petitioner claims the true net award is $101,647.00, due to her higher estimation of the value of respondent's stock in the family corporation.

respondent was ordered to pay $750.00 in attorney's fees which petitioner had previously incurred as well as $1,233.00 in fees for the guardian ad litem and court costs. Petitioner has requested respondent be ordered to contribute $3,000.00 toward her attorney's fees on appeal.

## II.

Petitioner contends that the trial court's property settlement was not equitable. We disagree, and affirm the trial court.

Our analysis begins with section 598.21, The Code 1981, which codified many aspects of our prior case law. A justified property division is one that is equitable under the circumstances. *In re Locke*, 246 N.W.2d 246, 251 (Iowa 1976); *In re Marriage of Cooper*, 225 N.W.2d 915, 919 (Iowa 1975). Although frequently an equal division of assets is made, there is no mechanical rule that dictates this result. *In re Marriage of Schissel*, 292 N.W.2d 421, 423 (Iowa 1980); *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979). The factors to be considered in achieving a fair and equitable determination of the property rights of the parties are set forth in *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968) (modified to exclude fault); *In re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972)). When asked to review an individual economic provision of a dissolution decree, we consider all the provisions together as an integrated whole. *See In re Marriage of McFarland*, 239 N.W.2d 175, 179 (Iowa 1976).

The trial court's property settlement was consistent with the spirit of section 598.21 and our existing case law. Both parties worked during the marriage and contributed to the accumulated equity in the marital homestead, thus it was equitable to award respondent $10,000.00 in equity. Both are currently employed at good paying jobs. The evidence clearly indicates that respondent's stock in the family corporation was obtained as a gift from his parents. The family corporation is a primary source of income for respondent. If the trial court had awarded petitioner part of the stock this could reduce respondent's future income and impair his ability to make his court ordered child support payments. In addition, the trial court's refusal to award petitioner alimony was justified in light of the earning potential of both parties. We find that the trial court properly evaluated these factors and made an equitable property division.

## III.

Respondent cross-appeals, contending that the trial court should have awarded him custody of the parties' children, or in the alternative, granted the parties joint custody. We affirm the trial court.

Our first and governing consideration in determining custody is the best interests of the child involved. Iowa R.App.P. 14(f)(15). With this in mind, we note further that the status of children should be quickly fixed and, thereafter, little disturbed. *In re Marriage of Bowen*, 219 N.W.2d 683, 687–88 (Iowa 1974). In deciding the custody issue, we seek neither to punish one parent nor reward the other. *In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973). There is no inference favoring one parent as opposed to the other in deciding which is the more fit custodian except that arising from the particular facts of the case. *Bowen*, 219 N.W.2d at 688. Factors relevant to the custody determination are listed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), with the ultimate question being, based on the entire record, which of the parents can minister more effectively to the long-range best interests of the children. *Id.*; Iowa R.App.P. 14(f)(15). We conclude in the instant case that that parent is the petitioner mother.

The record indicates that the petitioner had primary responsibility for the children

during the marriage. Respondent's job requires considerable travel, which would make it very difficult for him to be successful as both a single parent and wage-earner. Liberal visitation privileges will be sufficient to allow respondent to continue both his parental relationship and his current occupation.

The special concurrence suggests that one parent should not be able to veto a joint custody arrangement, that noncommunicative parents should be required to undergo professional counseling in order to implement joint custody, and presumes that joint custody is in the child's best interest. This would require a change in the joint custody test of *In re Marriage of Burham*, 283 N.W.2d 269, 274 (Iowa 1980). We believe existing joint custody provisions are quite satisfactory. Our current law only requires minimal counseling prior to a dissolution, to require the parties to undergo post-divorce counseling so that they can cooperate in joint custody after the court has already found irreconcilable differences which justify granting a dissolution is impractical and a waste of the parties' financial and emotional resources. Child rearing involves many day to day decisions and requires, for the most part, that someone have the final say. If both parties to a joint custody arrangement agree, there will be few problems, but where one or both disagree, no amount of court ordered or voluntary counseling will satisfactorily resolve the problems which will inevitably arise.

To presume that joint custody is in the child's best interest overlooks the basic fact that joint custody *may not* be in the child's best interest. To force continued association between the parties by marriage counseling or other means under the threat and penalty of loss of custody, or loss of "ability to minister effectively to the child's welfare" as suggested by the special concurrence only prolongs and perpetuates the unpleasantness and litigation that no-fault dissolution was at least partially designed to avoid.

## IV.

Petitioner also requested $3,000.00 attorney's fees on appeal. In evaluating such a request, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Erickson*, 228 N.W.2d 57, 59 (Iowa 1975); *In re Marriage of Stom*, 226 N.W.2d 797, 800 (Iowa 1975). We deny petitioner's request, but affirm the trial court's prior award of attorney's fees.

The costs of this appeal shall be equally divided.

AFFIRMED.

All Judges concur, except JOHNSON, J., and OXBERGER, C. J., who specially concur.

JOHNSON, Judge (specially concurring).

While the current law of Iowa requires trial court to deny respondent's request for joint custody because "petitioner does not agree to joint custody and the parties have demonstrated that they are unable to communicate with each other and give priority to the welfare of the children," *In re Marriage of Burham*, 283 N.W.2d 269, 275 (Iowa 1980), I feel compelled to address this issue. In my opinion, the power to veto joint custody currently accorded either parent serves the best interests of neither the children nor the parents. Joint legal custody certainly does not require each party to have physical custody of the children for any fixed percentage of the time. In my opinion, it means that each parent legally has the rights and responsibilities associated with parenthood in lieu of reducing a noncustodial parent's role to that of a favorite, visiting relative.

Where, as here, the court finds each parent is a fit and proper person to have custody, especially when geographical proximity is favorable, I believe the law should presume that joint custody is in the children's

best interests. Noncommunicative parents should be required to make every reasonable effort, through professional counselling if necessary, to establish a mature attitude of cooperation as adults mutually dedicated to their minor children's welfare. Except in the most extreme cases, a failure to reach a functional relationship of cooperation should raise serious doubts as to either parent's ability to minister effectively to the children's welfare. However, because we are bound by the law as given, I would affirm trial court's award of custody to petitioner.

OXBERGER, C. J., joins in this special concurrence.