In re the MARRIAGE OF Richard B. LATTIG and Shirley K. Lattig.

No. 2–65756.

Court of Appeals of Iowa.

Feb. 24, 1982.

James W. Carney of Carney, Hudson, Williams & Green, Des Moines, for petitioner-appellant.

John E. Casper of Flander & Casper, Winterset, for respondent-appellee.

Considered by OXBERGER, C. J., and DONIELSON, SNELL, CARTER, and JOHNSON, JJ.

DONIELSON, Judge.

The petitioner husband appeals from the economic provisions of the dissolution decree dividing properties held by him prior to the marriage. The petitioner contends that the trial court failed to make an equitable division of such properties in light of the fact that (1) they were acquired prior to the marriage and involved inherited property; (2) that the respondent wife contributed little to the property; and (3) that the marriage was of a short duration. We affirm as modified.

We recognize initially that petitioner's notice of appeal was premature since it was filed after the court had entered a partial ruling related to the challenged property division but before it had entered the supplemental decree incorporating this ruling.[1] It appears, however, that no purpose would be served by refusing to entertain this appeal pursuant to Iowa R.App.P. 1(c) since the trial court did enter a decree incorporating the challenged findings and conclusions. Thus, we proceed to the merits.

Our review of this equitable proceeding is de novo. Iowa R.App.P. 4. Our responsibility is to review the facts as well as the law to determine rights anew from the credible evidence on issues properly presented and preserved. *In re Marriage of Full*, 255 N.W.2d 153, 158 (Iowa 1977). While we give weight to the findings of the trial court, especially where the credibility of witnesses is involved, we are not bound by them. *In re Marriage of Novak*, 220

---

1. On June 10, 1980, the court entered a partial ruling and order dissolving the marriage and distributing some of the assets. In a further ruling filed August 14, 1980, the court awarded the respondent wife an equity share in farmland purchased by the husband before the mar-

riage. The husband filed his notice of appeal on September 11, 1980, but the supplemental decree, incorporating the provisions of the August 14 ruling, was not entered until September 19, 1980.

N.W.2d 592, 597 (Iowa 1974); Iowa R.App.P. 14(f)(7). As in all cases of this type, precedent is of little value and our decision must ultimately depend on the particular facts of this case. *In re Marriage of Kehrli*, 241 N.W.2d 923, 296 (Iowa 1976).

### I.

The parties were married on April 7, 1973. There were no children born of this marriage. The respondent, Shirley Lattig, had custody of four school-age children by her previous marriage, none of whom were adopted by petitioner, Richard Lattig. The parties separated in October or November of 1978 and Richard filed for dissolution on May 3, 1979. The court ordered the marriage dissolved in a partial ruling filed June 10, 1980. A Supplemental Judgment Decree was entered September 19, 1980, incorporating the provisions of this partial ruling.

When Shirley entered the marriage, she brought with her a sewing machine, her clothing, and a small amount of cash. Richard brought into the marriage an undivided one-quarter interest in residential property in Macksburg, Iowa, and a two hundred (200) acre farm in Madison County. These two real estate holdings constituted the main assets divided by the trial court in its decree.

The Macksburg property served as the marital residence of the parties. It was acquired by Richard and his three sisters in 1969 through an inheritance received from their mother. The residence was considered Richard's family home where he lived with his sisters until they married or left home. After the 1973 marriage, Richard and Shirley occupied the house. In March 1977, Richard's sisters sold him their interest in the Macksburg property for $2,000 each. To finance this and other purchases, Richard borrowed $12,464.84 from Associates Financing Company of Creston, Iowa (Associates) and gave Associates a mortgage on the property. Shirley cosigned the promissory note to Associates. The remainder of the loan was used to insulate and re-side the house, to pay other family debts, and to

purchase a pickup truck. While they were married and living together, Richard paid $235.00 per month on the Associates loan.

After she and Richard had separated and had moved to different residences, Shirley leased the house for $125.00 per month. Thereafter, Richard discontinued making the loan payments to Associates. Shirley used the rental payments, her personal funds, and borrowed funds in an attempt to continue to make the loan payments. She paid a total of $896.44 to Associates in an attempt to avoid default on the loan. At the time of trial, however, the payments were delinquent and Associates was ready to foreclose on its mortgage. The balance on the loan was $12,460.84. Thus, in its partial ruling, the court ordered the residence immediately sold for cash. The parties sold the residence for $15,000.00. From this amount, the court ordered the parties to pay the loan balance and other joint debts totalling $14,246.77. The balance of the proceeds was to be applied to the court costs with Richard paying any deficit or receiving any excess proceeds.

The 200 acre farm was the other main asset treated in the property division. In 1972, *prior to the marriage*, Richard had purchased the farm on an installment contract for $325.00 an acre, or $65,000.00 total. Richard made the $15,000.00 down payment by borrowing money from his two sisters. A year later, but before he was married, he paid back $8,000.00 of this debt to his sisters. The remainder was paid on October 1979 from the approximate $10,300.00 Richard inherited from his grandfather. Thus the full amount of the down payment was either made before the marriage with Richard's own funds or with funds he inherited.

Richard began farming the land in 1972. He borrowed funds from Iowa State Bank to set up the farming and hog production operations. Several farm loans were taken out but were consolidated in one note in 1976. Shirley did not cosign this note but did sign to guarantee the loans. To secure the note, the bank took a security interest in the farm machinery and equipment, as well as what is essentially a second mort-

gage in the farm property. In 1976, Iowa State Bank required that a substantial amount of the farm equipment be sold and applied to the loan. At the time of trial there remained a $9,200.00 balance on the Iowa State Bank loan and a $26,000.00 balance on the installment contract.[2] Thereafter, Richard ceased farming and began working as a carpet layer. In 1976 and again in 1979, Richard cash rented the farm under a three-year lease arrangement. The farm was subject to the lease agreement at the time of trial. Richard sold the hog equipment a month before the trial, but at that time the proceeds had not been applied to the loan.

Richard made *all payments* on both the installment contract and on the Iowa State Bank loan during the marriage. Richard also paid *all* of the farm expenses. Shirley made *no payments* on the farm. She did, however, help with various farm tasks by operating machinery and by helping to build fence and shelters. But after she began working full time for an advertising newspaper in October 1973, approximately six months after the parties' marriage, Shirley did not help much on the farm. At the trial, Shirley testified that during the marriage she spent the "biggest share" of her paychecks on her children, though she did buy some groceries and meals.

Shirley is presently employed at the advertising newspaper and grosses approximately $14,400.00 per year. Richard has been laying carpet on his own and estimated that at the time of trial he was grossing about $10,000.00 per year.

In its ruling, the trial court found that the farm property had appreciated $145,000.00 in value since its purchase eight years prior to the trial, yielding a present worth of $1,050.00 per acre, or $210,000.00 total. The court awarded Shirley $68,297.00 equity in the farm property to be paid to her over a five-year period with ten percent interest accruing annually. Richard then instituted this appeal.

## II.

Richard contends that an award to Shirley of $68,297.00 equity in the farm does not represent an equitable division of this property. We agree and modify the award in accordance with the principles set forth below.

Our analysis is governed by section 598.21, The Code 1979, as amended by Acts 1980 (68 G.A.) ch. 1175 which codified many aspects of our prior case law. *See Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968) (modified to exclude fault, *In re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972)). Section 598.21 provides that, upon every dissolution of marriage:

1. . . . The court shall divide all property, except inherited property or gifts received by one party, equitably between the parties after considering the following:

    a. The length of the marriage.

    b. The property brought into the marriage by each party.

    c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

\*    \*    \*    \*    \*    \*

2. Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

Thus, the ultimate question is, as it has always been, whether the distribution of property was equitable. We reject any rule based on a percentage division of the assets and must determine what is equitable under the specific facts of this case. *In re Marriage of Callenius*, 309 N.W.2d 511,

---

**2.** Richard attempted, unsuccessfully, to pre-pay the amount due under the installment contract; the seller refused all proffered payments.

514 (Iowa 1981). When asked to review an individual economic provision of a dissolution decree, we consider all the provisions together as an integrated whole. *In re Marriage of McFarland*, 239 N.W.2d 175, 179 (Iowa 1976). As an additional factor in dividing appreciated property acquired before the marriage, we consider whether the appreciation which occurred during the marriage was fortuitous or due to the efforts of the parties. The underlying premise of our analysis is that an equitable property division of the appreciated value of the property should be a function of the tangible contributions of each party and not the mere existence of the marital relationship. There is support for this proposition in cases applying the *Schantz* criteria. *See Arnold v. Arnold*, 257 Iowa 429, 439–40, 133 N.W.2d 53, 60 (1965); *In re Marriage of Anderson*, 243 N.W.2d 562, 563–64 (Iowa 1976); *Zinger v. Zinger*, 243 N.W.2d 639, 640–42 (Iowa 1976); *In re Marriage of Woodword*, 229 N.W.2d 274, 278–79 (Iowa 1975); *In re Marriage of Cooper*, 225 N.W.2d 915, 920 (Iowa 1975); *In re Marriage of Ralston*, 242 N.W.2d 269, 271 (Iowa 1976); *In re Marriage of Briggs*, 225 N.W.2d 911, 913 (Iowa 1975). In these cases, the court recognizes as substantial, the contribution of the wife as housemaker and mother even though the husband contributed more financially. The contributions of the wives in these cases allowed them an equitable share in the properties, most of which were jointly held.

### III.

The parties were married approximately seven years, but they were separated for approximately twenty months prior to the dissolution by a partial ruling in June of 1980. During their marriage, they lived on the Macksburg property where they shared the household duties. While Richard owned part of the property when the couple married, Shirley cosigned the loan to purchase the remainder of the home and made payments on the loan after they separated.

Accordingly the proceeds of the sale of this property were used to pay the couple's joint debts and court costs. The contributions made by Shirley were recognized in the disposition of the Macksburg property. Therefore, we affirm the trial court's disposition of this property.

With regard to the farm property, however, we find that the sum of $68,297.00 does not correctly reflect the contributions made by Shirley and thus the award of such sum is inequitable. The formula used by the lower court essentially gives Richard credit for the amount of his down payment on the farm, a two-thirds percentage of the amount he inherited from his grandfather, the $3,000.00 paid on the installment contract before the marriage, the $8,000.00 repaid to his sisters, and the $12,083.00 representing the appreciation which accrued before the marriage. The remaining appreciation value and the $21,000.00 in payments on the installment contract were divided between the parties with Shirley's percentage being reduced by one-fourth, the amount of her paychecks which were allegedly devoted to the care of her children.[3] Thus, the court arrived at its formula by figuring how much of Shirley's paycheck could not have been found to have contributed to the farm's value. This accounts for the four-sevenths and three-sevenths awards to Richard and Shirley respectively. What this formula does not take into account, however, is how much was actually contributed by Shirley to the purchase of the farm and the appreciation in its value. It is clear from the record that Shirley did not make any payments on the farm, nor was the property jointly held.

■ Where the accumulated property is not the product of the joint efforts of both parties or where, as here, one party brings property into the marriage, there need not necessarily be a division. This is especially true where the marriage was of short duration. *See In re Marriage of Steenhoek*, 305 N.W.2d 448 (Iowa 1981) (upon dissolution of

---

**3.** We take note of the fact that at one point Shirley asserted that the "biggest share" of her

paychecks were used to support her children.

a five-year marriage, husband received credit for property he brought into the marriage, some of which was inherited); *In re Marriage of Winegard*, 278 N.W.2d 505, 512 (Iowa 1981) (court stated a larger award may have been justified but for the brevity of the marriage). *But see In re Marriage of Moffott*, 279 N.W.2d 15, 20 (Iowa 1979) (parties' contribution is important but not sole consideration and inheritance may be subject to division). A cogent example of this reasoning applied to appreciated property value is *Mol v. Mol*, 147 N.J.Super. 5, 9, 370 A.2d 509, 510 (Super.Ct.App.Div.1977), where the court held that, with respect to the marital home purchased by the husband before the marriage, the wife was not entitled to share in that portion of enhancement in value which was due solely to inflation or other economic factors to which she did not contribute in any way. The court in *Mol* emphasized, however, that under the equitable distribution statute a spouse would be able to share in those elements of increase to which she contributed and those for which she and her spouse were jointly responsible. *Id.*

In *Mol*, the trial court's reasoning which was rejected on appeal was similar to that of the trial court in the instant case. There, as here, the court subtracted the purchase price from the present market value to arrive at a figure representing the total increase in value. The court then gave the husband a credit against the increase in value in an amount equal to his down payment. Subtracting this down payment amount, the court arrived at a figure representing the net increase in value. The court awarded the wife forty percent (40%) of this net increase in value and additionally awarded her fifty percent (50%) of the mortgage payments made by the husband during the marriage. The lower court found that the sum of these two figures represented her share of the equitable distribution of that part of the value of

the home which accrued during the marriage. *Id.* at 9, 370 A.2d at 509. On appeal, this analysis was found to be in error since the trial court did not determine what, if any, contribution the wife made in enhancing the value of the home. *Id.*

Other cases have been decided under the same reasoning. *Cf. Kirkland v. Kirkland*, 488 P.2d 1222, 1227 (Okl.1971) (wife not entitled to one-half of difference between value of stock when husband inherited them during marriage and the value of such stocks at time of trial where there was no showing that wife contributed to enhancement of value by joint effort, skill, or funds); *J. D. P. v. F. J. H.*, 399 A.2d 207, 211 (Del.1979) (increase in retained corporate profits due to economic conditions not divisible).

We believe this is the correct analysis under our prior case law and section 598.21, The Code. Where a party contributes substantially to the marriage, those efforts should be recognized when the property is distributed.

■ Shirley did guarantee the loan for the farm equipment and did help on the farm for a short period of time before she began working full time. She should receive credit for the extent to which she was at risk under the loan agreement and for her contribution to the marriage. We believe that this amount should be a lesser sum than that awarded by the trial court. Accordingly, Shirley's equity in the farm in Madison County is reduced to $25,000.00. We believe this division is equitable.

■ One other aspect of the property settlement must be modified. The trial court erroneously established the interest rate on Shirley's installment payments at ten percent (10%) per annum. Interest on judgments and decrees was statutorily set at seven percent (7%) at the time the dissolution decree was entered. *See* Section 535.3, The Code 1979.[4] Thus, we further

---

4. Section 535.3 was amended by Acts 1980 (68 G.A.) ch. 1170 § 1 to provide that the interest rate be increased from seven to ten percent, and shall accrue from the date of the commencement of the action. However, § 2 of the amendment provides that "This Act is effective January 1, 1981 and shall not apply to judgments rendered or decrees entered of record before that date." The decree in this case was entered September 19, 1980 and thus, the seven percent rate applies. *See In re Marriage of Steenhoek*, 305 N.W.2d 448, 454 (Iowa 1981)

modify the decree by changing the interest rate to seven percent (7%).

Respondent, Shirley Lattig, shall have a lien on the farm property in the amount of $25,000.00 and petitioner, Richard Lattig, shall execute a mortgage to her in that amount payable in five years, with interest at the rate of seven percent payable annually.

█ We deny petitioner's request for attorney fees incurred due to this appeal. The primary consideration in making the determination of an award of attorney's fees is the parties' resources. *In re Marriage of Winegard*, 257 N.W.2d 609, 618 (Iowa 1977). In light of the parties' present earning capacities, we also believe the costs of this appeal should be divided equally.

AFFIRMED AS MODIFIED.

(court reduced interest rate on installment pay-