In re the **MARRIAGE OF James Duard STAFFORD and Nancy Louise Stafford.**

**Upon the Petition of James Duard Stafford, Petitioner-Appellee,**

**And Concerning Nancy Louise Stafford, Respondent-Appellant.**

**No. 85–29.**

Court of Appeals of Iowa.

Jan. 29, 1986.

David H. Correll of Price, Correll & Sheerer, Cedar Falls, for respondent-appellant.

Jay P. Roberts and David L. Takes of Swisher & Cohrt, Waterloo, for petitioner-appellee.

David D. Dunakey of Dunakey & Klatt, Waterloo, for parties' children.

Heard by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Respondent Nancy Stafford appeals the trial court's decision modifying the original divorce decree and awarding sole custody of their two children to petitioner and also modifying her visitation rights. We modify and affirm the trial court.

Jim and Nancy Stafford dissolved their marriage on May 19, 1982, and incorporated into the dissolution decree a custodial arrangement stipulated to by both parties. The stipulation, in essence, allowed for joint custody with physical custody placed with the father, Jim Stafford. The agreement, however, provided extremely liberal visitation rights for Nancy including vacations, periodic holidays, periodic weekends, and periodic overnight stays. While Jim had physical care and placement during the school year, Nancy was provided physical placement from June 1st through August 31st each year.

Both parents agreed to allow the other to have an equal voice in the children's education and general welfare. In short, the parties agreed to allow the other parent unlimited access to the children. Finally, the stipulation stated, "It is further agreed by the parties herein that in the event either party shall leave the State of Iowa and reside permanently in another state that the District Court of the State of Iowa in and for Black Hawk County shall retain jurisdiction of the children and subject matter herein."

In March of 1982, Nancy commenced residing with her present husband, Elias Jacobo, M.D., and in August of 1982, Jim married his present wife, Lila. Both parents have stable, economically sufficient homes, and both parents have demonstrated their love for their children and their aptitude and ability to provide for the children's well-being. It was shortly after the decree, however, that it became evident that the stipulation of "unlimited access" proved itself to be a source of controversy. Two days after the decree, Jim's attorney advised Nancy's previous attorney that the term "unlimited access" meant "reasonable" access. But Nancy was adamant that the provision should be interpreted literally, and during the next two years exercised extensive visitation with the chil-

dren. Soon, her constant contact with the children produced a great deal of personal animosity not only between her and Jim but also between her and Lila.

The present controversy arose when Jim accepted a new position in Spokane, Washington, in early September 1984. On September 27, 1984, he secretly moved with his children and wife, Lila, to Washington. Shortly after arriving in Washington, Jim contacted Nancy and allowed her to talk with the children and informed her that he would return to Iowa to determine the custodial arrangements for the future.

Obtaining an ex parte temporary custody order, Nancy traveled to Spokane and spirited the children away from Jim and returned with them to Iowa. She then filed for a modification of the custody arrangements, asking that because of substantial changes in the circumstances unforeseen at the time of the decree she should now have primary physical custody. Jim answered her application and requested, in turn, that he be awarded sole custody.

The trial court, in its findings of fact, concluded that Jim's move to Washington was based upon a "reasonable economic decision" for long-range economic growth. The court also concluded that an additional reason for the move was to avoid the "constant hassle between Petitioner and Respondent."

We quote the trial court's resolution: The primary cause of the ever-increasing lack of cooperation between the parties and of the total inability of the parties at this stage to communicate effectively in regard to the children has been the Respondent's method of exercise of unlimited access to the children and arbitrary enforcement of her visitation rights under that Decree in instances that were not necessarily in the children's best interest and were without thought or concern in relationship to Petitioner's household. Respondent's demand for the children at times that were best suited or most convenient to her with little or no notice and her apparent requirements that her visitations with the children be conducive only to her schedule, left the children without knowing from day to day where they would be and built the animosity between the parties. The children were clearly caught in the middle of all of this. While Respondent loves the children very much and is capable of caring for them, the evidence reflects that there were three basic concerns on her part that give rise to much of her visitation demand ahead of the best interest of the children. These appear to be (1) her own self-gratification in being with and having the children; (2) her desire to demonstrate to Petitioner her absolute rights under the Decree; and (3) the fear the Court believes Respondent has and had that Petitioner's present wife would replace her in the children's eyes as mother of the children.

Based upon these findings the trial judge awarded sole custody of the children to Jim and, because of the change in circumstances, modified Nancy's visitation rights. On appeal, Nancy raises six issues, however, we will consider several issues together because of their similarity.

**I. Custody.** In her petition, Nancy applied for a change in primary physical custody of the children. Jim, on the other hand, not only opposed her application, but also applied for sole custody of the children. In its judgment and decree the trial court set aside the joint custody of the children and awarded Jim sole custody. On appeal, Nancy does not address the issue of sole custody and instead argues extensively that the trial court erroneously placed the burden of proof upon her to show that she should have been awarded primary physical care of the children. She also argues that the trial court erred in its findings of fact that Jim could minister more effectively to the children's well-being.

We are concerned that Nancy failed to specifically address such a central issue and important part of the judgment and decree on appeal. Resolution of who should have primary physical care does not also resolve the issue of sole custody, or

joint custody. These concepts are related, but present different issues. *See In re Marriage of Frederici*, 338 N.W.2d 156, 159 (Iowa 1983). In *Frederici*, at 159, the supreme court stated:

> The governing statute defines and distinguishes between joint custody and physical care. Joint custody gives the parents equal legal rights and responsibilities over the children. Iowa Code § 598.1(4) (1983). It is distinguished from physical care, which is the right and responsibility to maintain the principal home and to provide routine care for the children. § 598.1(5).

■ Our review of this equitable proceeding is de novo. Iowa R.App.P. 4. Our responsibility is to review the facts as well as the law and to determine rights anew from the credible evidence on properly presented and preserved issues. *In re Marriage of Castle*, 312 N.W.2d 147, 148 (Iowa App.1981). While we give weight to the findings of the trial court, especially where the credibility of the witnesses is involved, we are not bound by them. *Id.*; Iowa R.App.P. 14(f)(7).

■ To change a custodial decree, whether it is joint custody to sole custody, or primary physical custody within a joint custodial relationship, requires the applying party to bear a heavy burden of proof. The *Frederici* court stated:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of the evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change.... A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

338 N.W.2d at 159.

In the case before us, the trial court was convinced that Jim had carried his burden

of proof that he should receive sole custody of the children. In doing so, the court specifically rejected retaining a joint custody relationship, saying that "joint custody is no longer in the interests of the children," and that it "... has, in fact, worked to the detriment of the children's well-being since the time of dissolution."

■ We respect the trial court's unique perspective in matters like the case at bar, but we cannot agree that setting aside joint custody is in the best interests of the children. The legislature and the judiciary of this State have adopted a strong policy in favor of joint custody which should be deviated from only in the most compelling circumstances. This case does not provide such circumstances. The record is filled with examples of tension, selfishness, and anger on the part of all the adults involved in this case. However, abdication of joint custody is not the solution.

> Although cooperation and communication are essential in joint custody, tension between the parents is not alone sufficient to demonstrate it will not work. Dissolution of the marriage demonstrates that the relationship between the parties has broken down. The legislature, however, requires a custody award, "insofar as reasonable and in the best interest of the child, ..., including liberal visitation rights where appropriate, which will assure a minor child frequent and continuing contact with both parents after the parties have separated or dissolved the marriage and which will encourage parents to share the rights and responsibilities of raising the child." § 598.41(1). Joint custody is intended to foster that objective, leaving each parent with the "rights and responsibilities associated with parenthood in lieu of reducing a non-custodial parent's role to that of a favorite, visiting relative." *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981) (Johnson, J., concurring). This is because the child needs and deserves the help of both parents

and not because of joint custody's effect on parental self-esteem. *In re Marriage of Bolin*, 336 N.W.2d 441, 446, 447 (Iowa 1983). Although the issue of sole custody has not technically been preserved in this case, our responsibility remains to determine the rights of the parties anew. *See Castle*, 312 N.W.2d at 148. To refrain from awarding joint custody would not be in the best interests of the children. Consequently, denial of joint custody due to the failure to preserve the issue would, in effect, penalize the children for an error over which they had no control.

■ We hold, therefore, that the trial court erred in awarding sole custody of the children to Jim. Because of the similarities in the burden of proof, we hold instead that Jim has proven that he should have primary physical custody of the children. Both parties, however, shall have joint custody of the children. Our holding today necessarily nullifies the "unlimited" rights afforded in the parties' original stipulation. It is this document that is the source of the grief and torment the children have had to bear until now. Our award of joint custody merely gives Nancy the legal rights and responsibilities over the children within the confines of the rest of the trial court's judgment and decree.

■ **II. Child Support, Visitation Rights, and Costs.** The trial court modified the support and visitation provisions of the decree to require Nancy to pay child support in the amount of $8.00 per week per child, and one-half of the costs of transporting the children between Spokane, Washington, and Waterloo, Iowa. It also obligated her to pay one-half of the children's attorney fees and court costs. Since their divorce, Nancy has married a medical doctor who earns in excess of $100,000 a year. The court was entitled to take into consideration Nancy's financial condition, and her husband's income, as it bears upon her financial condition and ability to pay child support. *See Page v. Page*, 219 N.W.2d 556, 558 (Iowa 1974); Iowa Code section 598.21(8) (1985).

Our reinstatement of joint custody does not affect this portion of the trial court's decree. We therefore affirm the trial court's modification of support, visitation, and award of costs.

Because we hold that joint custody would be in the best interests of the children, we modify the trial court's decree to replace sole custody in Jim, with primary physical care of the children. In all other respects we affirm the trial court.

AFFIRMED AS MODIFIED.