In re the MARRIAGE OF Donald D. BROWN and Judith Richmond Brown

Upon the Petition of Donald D. Brown, Appellant/Cross–Appellee,

And Concerning Judith Richmond Brown, Appellee/Cross–Appellant.

No. 89–1035.

Court of Appeals of Iowa.

Sept. 26, 1990.

John W. Hayek of Hayek, Hayek, Hayek & Holland, Iowa City, for appellant/cross-appellee.

R. Bruce Haupert of Leff, Leff, Leff, Haupert & Traw, Iowa City, for appellee/cross-appellant.

SCHLEGEL, Judge.

Petitioner Donald Brown and respondent Judith Brown were married in August 1962. Petitioner had completed his first year of medical school, and respondent was beginning a masters degree program, both at the University of Iowa. For the most part, the parties agree that their marriage was a mutual effort and that their employment during their post-graduate educations was for the benefit of both. Respondent received her masters degree in 1964 and worked through 1966, with the exception of a six month maternity leave in 1965.

When petitioner earned his medical degree in 1966, the couple and their child moved to New York for petitioner's residency and, in 1971, with a second child, to Florida while he served in the military. In 1973 the entire family moved to Iowa City, where petitioner joined the University of Iowa's faculty in the Department of Internal Medicine. During this time and until 1976, respondent worked only in the home.

In 1977 respondent obtained a position in the Weeg Computer Center at the University of Iowa. Since that time, she has been employed as a systems analyst/computer consultant and has authored a book on computer graphics careers.

At the time of the trial, in September 1988, petitioner, age 49, earned $114,000 per year, and respondent, age 48, earned $32,625 per year. By agreement, the parties divided their approximately $381,000 net worth, including pension funds. Both have university benefits, including medical, dental, life, and disability coverage, as well as retirement plans. Both of the children have left home. Both of the parties are in good health.

· The trial court entered a decree of dissolution pursuant to Iowa Code section 598.17 (1989). Citing respondent's ten year absence from the job market and the consequent loss of "seniority, pay increases, social security and pension rights," the trial court ordered petitioner to pay $1,700 per month as support to respondent until she dies or remarries.

Petitioner appeals both the necessity and amount awarded to respondent as support. Respondent appeals the trial court's failure to include an annual cost of living adjustment in its order for spousal support.

Our review of this equitable proceeding is de novo. Iowa R.App.P. 4. We must review all of the facts and circumstances, as well as the law, to determine rights from credible evidence on issues properly presented and preserved. *In re Marriage of Full*, 255 N.W.2d 153, 158 (Iowa 1977); *In re Marriage of Lattig*, 318 N.W.2d 811, 812 (Iowa App.1982). We will, of course, give weight to the trial court's findings of fact, but we are not bound by them. Iowa R.App.P. 14(f)(7); *see In re Marriage of Novak*, 220 N.W.2d 592, 597 (Iowa 1974); *Lattig*, 318 N.W.2d at 811–12. Finally, precedent is of little value; therefore, we must reach our decision based on the particular facts of this case. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *In re Marriage of Kehrli*, 241 N.W.2d 923, 926 (Iowa 1976) (quoting *In re Marriage of Briggs*, 225 N.W.2d 911, 912 (Iowa 1975)); *Lattig*, 318 N.W.2d at 812.

Iowa Code section 598.21(3) permits a court to "grant an order requiring support payments ... for a limited or indefinite length of time after considering" several factors. Among the relevant considerations are length of marriage, Iowa Code § 598.21(3)(a); parties' age and health, *id.* § 598.21(3)(b); property distribution, *id.* § 598.21(3)(c); parties' education, *id.* § 598.21(3)(d); earning capacity of party seeking support, including education, skills, absence from job market, *id.* § 598.21(3)(e); feasibility of that party being "self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to

achieve this goal," *id.* § 598.21(3)(f); and other relevant factors, *id.* § 598.21(3)(j).

Under the facts and circumstances in this case, and upon our de novo review, we conclude that respondent is not entitled to receive support for an indefinite period to terminate at respondent's death or remarriage. We find that the parties' marriage was lengthy; that they aided each other in obtaining their education, their respective careers and their joint success. We are not convinced that respondent suffered greatly by her absence from the job market. Because of these factors and because of evidence that the large disparity in the parties' earning capacities will endure while respondent's standard of living will remain below that to which she is accustomed, we affirm the award of $1,700 per month. Further, we conclude that ten years of rehabilitative and reimbursement support is sufficient given the large property division and relatively high incomes and benefits received by both parties. We thus modify the trial court's decree and hereby limit spousal support payments to a period of ten years.

Respondent argues that she is entitled to an annual cost of living adjustment (COLA). The courts of this state have been sensitive to inflation's toll on parties to a dissolution, particularly on fixed child support payments. In 1980, the Iowa Supreme Court took historic strides toward more equitable treatment of parties to a dissolution by allowing COLA for child support payments. *See In re Marriage of Stamp*, 300 N.W.2d 275 (Iowa 1980). Writing for the court in *Stamp*, Chief Justice Reynoldson recognized that without a COLA, a custodial parent is faced with the "Hobson's choice of absorbing the impact of significant daily deterioration in the purchasing power of fixed child support payments, or incurring substantial legal expenses in returning to court for needed modification" of the dissolution decree. *Id.* at 280. In reaching its result, the court took notice of "the reduced purchasing power of the dollar" and recognized widespread use of COLAs in numerous federal statutory provisions and private contractual arrangements that both recognize and attempt to avoid "inflation's toll." *Id.* at 279 (quoting *Hunt v. State*, 252 N.W.2d 715, 722 (Iowa 1977)). We are not persuaded, at least in this case, that a COLA is either necessary or appropriate. We recognize that she may suffer "inflation's toll," but as we have noted above, respondent is well compensated and takes considerable property from the marriage.

The parties will share equally the costs of this appeal, and the parties will pay their own attorney fees.

AFFIRMED AS MODIFIED.

All Judges concur except OXBERGER, C.J., who dissents.

OXBERGER, Chief Judge (dissenting).

I concur with the majority opinion that the alimony should be reduced. However, I do not believe the record is adequate to determine the amount we should award.

I believe this case is an appropriate case for rehabilitative and reimbursement alimony. Judith's ten-year absence from the job market resulted in her losing "seniority, pay increases, social security rights, and pension rights" found by the trial court. I do not believe the record is adequate to pinpoint the specific dollar figure to compensate for her losses. I prefer not to guess at what the loss is. The awarding of $1,700 per month for ten years is $187,000. I do not believe the record evidence supports a finding that Judith's losses equal $187,000.

I differ with the following finding of the majority:

> Because of these factors and because of evidence that the large disparity in the parties' earning capacities will endure while respondent's standard of living will remain below that to which she is accustomed, we affirm the award of $1,700 per month.

I do not believe this is an appropriate case to award "lifestyle" alimony, nor to equalize spouses' incomes. Judith, forty-eight, has a master's degree, many years of work experience, a bright career future, an income of $32,625 per year, and a prop-

erty award of $190,000. Additionally, she has medical, dental, life and disability insurance, and pension benefits. The children are adults and she enjoys good health.

In *In re Marriage of Hayne*, 334 N.W.2d 347 (Iowa App.1983), we rejected the argument that the income of spouses should be equalized. We said:

> Petitioner's argument rests upon the assumption that after many years of marriage, during which a husband and wife have shared the husband's income equally and enjoyed the fruits of his labor, the wife is entitled to no less than half, or at least half of his anticipated future income by way of alimony should their marriage be dissolved. We reject that assumption. Nowhere in our law is such a principle recognized. Nor do the principles of equity countenance such a view.

I believe we should compensate Judith for her losses due to her ten-year absence from the job market. I do not believe equity justifies awarding her any additional money for "lifestyle." I believe her lifestyle has been adequately provided.

I would remand for more specific evidence of Judith's losses due to her ten-year absence from the job market.