**In re the MARRIAGE OF Allan P. BERGMAN and Denise D. Bergman,**

**Upon the Petition of Allan P. Bergman, Appellant,**

**And Concerning Denise D. Bergman, Appellee.**

**No. 90–660.**

Court of Appeals of Iowa.

Dec. 27, 1990.

Lorraine J. May and Glenn Goodwin of Duncan, Jones, Riley & Finley, P.C., Des Moines, and John Criswell, Indianola, for appellant.

Gary S. Gill, Des Moines, for appellee.

Heard by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

DONIELSON, Judge.

Allan Bergman and Denise Bergman were married on May 21, 1977. Their daughter, Amanda, was born October 26, 1982. The parties separated in 1987 and a dissolution decree was entered on April 26, 1988. The decree awarded the parties joint legal custody and placed Amanda in the physical care of Denise. Allan was awarded "fair and reasonable visitation." Allan married Sandi Bergman in October 1988.

At the time of the dissolution Denise had no significant physical impairments nor psychological or mental deficiencies. She was employed as a supervisor in the computer section of the Iowa Foundation for Medical Care and was of average or above average intelligence. Tragically, however, in June 1988, Denise was in an accident while riding a bicycle. She sustained a severe closed head injury and was in a coma for three weeks. Denise remained hospitalized for approximately six months subsequent to the accident and was discharged on December 23, 1988. For approximately one year, Denise was relearn-

ing the basic functions of everyday life. She was not capable of living independently until the latter part of 1989.

As a result of the head injury, Denise cannot walk without the aid of crutches. Some of Denise's intellectual abilities remain fairly intact while others have suffered significant impairment. Denise continues to meet periodically with Dr. Fish, a clinical neuropsychologist. His most recent report described Denise as having slow motor speed, difficulty with coordination on the dominant side, variable concentration, and difficulty retaining visual input. As far as problems are concerned, he reported Denise has the "typical inflexibility of head-injured people" and tends to jump to conclusions. While Denise has relearned much, the prognosis for further improvement is less optimistic. Dr. Fish reported that the most rapid improvement occurs in the first twenty-four months after a head injury and while improvement may continue after that period it would be slower.

Throughout the period of Denise's hospitalization and rehabilitation, Amanda lived with her father and, following his remarriage, with Allan's present spouse, Sandi Bergman. Allan frequently arranged visits between Amanda and Denise both before and after Denise's release from the hospital, believing the visits important to Denise's recovery.

In August 1989, Allan filed an application to modify the physical care and visitation provisions of the dissolution decree. Allan's application alleged that Denise had sustained serious and permanent injuries, both physical and mental, leaving her unable to properly take care of Amanda.

Denise resisted the application and, on November 30, 1989, Denise sought Amanda's return to her physical care. Allan did not immediately return Amanda to her mother's care. However, physical care was transferred on December 15, 1989, after Denise filed an application to show cause for contempt. Allan contends his hesitation was based on his belief that Denise was not capable of properly caring for Amanda.

A hearing on Allan's modification application was held on March 28–30 and April 3, 1990. The court's findings of fact, conclusions of law, and order were filed on April 12, 1990. The court modified the "fair and reasonable" visitation to weekend, holiday, and summer visitation, specifically disapproving the parties' prior practice of overnight visits during the school week. The trial court stated the main issue in the hearing was "whether Denise is physically and mentally able to look after Amanda." Consequently, when the court determined Denise was capable of parenting Amanda, the court denied Allan's application to transfer primary physical care.

■ Allan contends the court focused on the wrong issue, and, therefore, arrived at the wrong conclusion. We agree and, therefore, we modify the trial court's decree.

Our scope of review is de novo. Iowa R.App. P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App. P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

■ Our paramount consideration in determining custody is the best interests of the child. *Id.* As the Iowa Supreme Court, in *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983), stated:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the

other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

The frequently repeated principle that once custody of children has been fixed, it should be disturbed only for the most cogent reasons, *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980), is of lesser importance in the present case because Amanda resided with her father for eighteen months following the dissolution and her mother's accident. Unfortunately, Amanda's custody has not been "fixed" as would generally be the case. Custody has already been disturbed for cogent reasons.

While this court is truly sympathetic to Denise's accident-related mental and physical deterioration, we must conclude the petitioner has met his burden of proving by a preponderance of the evidence that there has been a substantial change in circumstances warranting a change in physical custody. Denise has suffered significant deterioration in her mental and physical capabilities. Her condition, while perhaps subject to some improvement, is more or less permanent—Dr. Fish did not testify otherwise. Further, Denise's deterioration does relate to the welfare of Amanda.

Amanda's first grade teacher, Ms. Cass, testified to noticing a difference in Amanda's appearance and performance in school at the time Amanda returned to live with Denise. She stated Amanda would have dark circles under her eyes and would appear overly tired at school. She testified that Amanda reported it was because Denise would forget it was a school day and let her stay up too late. Ms. Cass also testified Amanda's school performance began to deteriorate.

Amanda's therapist, Mary Hilliard, recommended that Amanda remain in Allan's physical custody. She testified that Amanda expressed a preference to live with her father and expressed safety concerns about living with her mother. Ms. Hilliard believed Allan and Sandi were in a better position to satisfy Amanda's needs for social interaction and her need to feel safe and secure.

The court-appointed custody investigator, Janet McDonough, reported that Amanda (then seven years, three months old) interacts with her mother as a peer. The investigator summarized her findings relating to Denise as follows:

Denise presents herself as a valiant woman who wants intensely to be able to raise her child, and who needs the youngster for her own rehabilitation. She clearly has some limitations as a parent, all of which appear to be attributable to the head injury. These limitations include cognitive factors and emotional factors. She has some limitation in her ability to fully cooperate with the other parent, in a shared custody or visitation arrangement. Whether these limitations will change cannot yet be determined.

Her findings concerning Allan and Sandi Bergman were summarized:

Allen [sic] and Sandi appear able to parent adequately, and they and Amanda appear mutually attached to each other. They appear to have attempted to support Denise's relationship with Amanda, although I don't think they are aware that Amanda may be behaving in ways that make things somewhat more difficult for Denise to parent her. They are somewhat more likely to excuse Amanda's behavior on the basis of Denise's limitations than to hold Amanda accountable. They may also be unaware that their worries about Denise's abilities may be showing up in Amanda's behavior with Denise. Admittedly, the role of supporting a child's relationship with a parent with significant head injury problems is a very tricky one, and they should not be faulted too much for the way in which they have managed the situation.

The investigator's report concluded:

Amanda has lived a good share of her life with her parents separated. She's had frequent and regular contact with both. She is attached to both, and to her step-mother. Her relationship with her father and step-mother appears to be the stronger and somewhat more appropriate

than that with her mother. She seems to trust them more than she trusts her mother. She appears to be progressing satisfactorily, although there is indication of emotional problem showing up primarily in school. That did respond to professional intervention, but also recurred under the stress (perhaps) of the custody dispute.

The parents also are attached to Amanda. There are no major concerns about Mr. Bergman's ability to raise the child adequately. Denise Bergman's history of head injury raises another set of questions about her ability to parent adequately, although she has made remarkable strides and may continue to do so. Prediction about her continued progress is beyond the scope of this investigation. She does have some limitation in her ability to successfully negotiate with the father and step-mother, although she tries hard to do so.

I recommend that the Court consider joint custody, with Amanda living with her father. While she should have frequent visits with her mother, I would recommend that overnight visits during the week be curtailed. I would suggest that the visits be specified, rather than left up to negotiation, as much as possible.

*    *    *    *    *    *

Based upon the foregoing testimony and findings of the professionals, this court concludes Allan has proven his abilities to parent are superior to Denise's. Because he is able to minister more effectively to Amanda's well-being, we modify the physical care provision of the dissolution decree. Allan shall have the primary physical care of Amanda.

However, we agree with the district court's finding that Denise is able to care for Amanda and we conclude visitation, as set out by the trial court, is appropriate.

Costs of this appeal are to be taxed one-half to each party.

AFFIRMED AS MODIFIED.