# IN THE COURT OF APPEALS OF IOWA

No. 3-1184 / 13-1073
Filed March 26, 2014

IN RE THE MARRIAGE OF BRIAN JOSEPH HART
AND DANIELLE MARIE HART

Upon the Petition of
BRIAN JOSEPH HART,
　　　Petitioner-Appellee,

And Concerning
DANIELLE MARIE HART,
　　　Respondent-Appellant.
_____

Appeal from the Iowa District Court for Dickinson County, Rosemary Sackett, Judge.

A mother appeals the district court order modifying physical care and, in the alternate, seeks additional visitation. **AFFIRMED AS MODIFIED.**

Michelle Mackel-Wiederanders, Des Moines, for appellant.

Andrea Smook of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellee.

Heard by Danilson, C.J., and Vaitheswaran and Mullins, JJ. Sackett, S.J., takes no part.

**DANILSON, C.J.**

Danielle Hart appeals the district court's order modifying physical care of her minor child, B.H. Danielle argues the court improperly found there had been a substantial change in circumstances. In the alternative, she argues even if there had been a substantial change in circumstances, the record reflects the best interest of the child was to remain in her physical care, rather than that of her father, Brian Hart. Finally, she asks that if Brian retains physical care, we modify the order to award her more liberal visitation. Because we find there has been a substantial change in circumstances and Brian can provide B.H. with better care, we affirm the modification of physical care. We modify the district court's order to expand the holiday and special day visitation.

**I. Background Facts and Proceedings.**

Danielle and Brian have one child, B.H., born in July 2003. The parties' marriage was dissolved in March 2006. On the same day, Danielle and Brian filed a court-approved stipulation of settlement. Within the settlement, the parties nominally agreed to joint legal and physical care of B.H. However, the brunt of the physical care was provided by Danielle, as Brian only had physical care on Wednesdays and every other weekend.

In February 2012, Brian filed a petition for modification of the stipulation. In the petition, Brian asked that he be awarded physical care of B.H. The district court held a hearing on the matter on May 16, 2013.

At the time the original settlement was entered, both Danielle and Brian lived in Spencer, Iowa. At trial, Danielle testified she had since moved to Ames, Iowa. She lived with B.H., as well as her two younger sons by two different

fathers. Danielle had recently completed courses and was a certified medical assistant. At the time of the hearing, she was working in a convenience store and looking for work in her field. Brian had moved to Papillion, Nebraska. He lived with his wife of over two years, Karissa Hart. Brian had a son with a woman he never married. Although he paid child support for his son, he testified he did not visit the child.

At the hearing, Brian indicated several reasons why he believed the physical care should be modified. He presented evidence regarding B.H.'s struggles with school as well as attendance issues. He also testified about concerns with B.H.'s safety in the home, citing a report from the Iowa Department of Human Services (DHS) from when B.H. reported inappropriate touching involving one of her half-brother's fathers. He noted both of the fathers of Danielle's other children have been convicted of felonies. Danielle did not dispute the testimony. Finally, Brian testified Danielle had purposely impeded visitation with B.H. by, at times, refusing to transport her and refusing to communicate about scheduled visitations.

In turn, Danielle denied she had caused any difficulty with visitation between B.H. and Brian. Contesting his claims he was better suited to be awarded physical custody of B.H., she also presented evidence Brian had been arrested for domestic abuse in 2008 and 2010 as a result of confrontations he had with his then girlfriend, Andrea Slifer.[1] Danielle also asked the district court

---

[1] At oral argument, Danielle maintained Brian had a "history of domestic abuse" and referred to five separate incidents. It appears she was referring to the following: In 2004, while the parties were still married, Danielle filed for a temporary protective order against Brian. She later requested that order be cancelled. In both 2008 and 2010, Brian was

to take judicial notice of a 2007 criminal case when Brian was charged and convicted of operating while intoxicated.

On June 13, 21013, the district court entered an order modifying physical care of B.H. As he requested, Brian was awarded physical care of B.H. Danielle was awarded visitation "on the second weekend of every month unless she has had or will have other visitation in that month but in no event shall the child have less than three days of visitation with Danielle in any given month." The order also provided Danielle with summer visitation "from two days after [B.H.'s] school is out until July 15th," as well as setting the schedule for future holidays. Danielle appeals.

**II. Standard of Review.**

In this modification proceeding, we review the record de novo. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). Because the trial court was present to listen and observe the witnesses, we give weight to its findings, although we are not bound by them. *Id.*

---

arrested for domestic abuse assault as a result of confrontations with his then-girlfriend, Andrea Slifer. He pled guilty to the 2008 arrest. The record concerning the 2010 arrest is unclear; however, a protective order was entered as a result of it. The protective order was later dismissed by the court at the request of Brian and Andrea. In 2011, Brian and Danielle entered into a "protective order by consent" where the court noted it was not making any findings of domestic abuse and that Brian had voluntarily consented to signing the no contact order.

Iowa Code sections 598.41(1)(b),(d) and (2)(c) and (d) (2011) pertains to child custody and the effect of a "history of domestic abuse" by a parent. In *In re Marriage of Forbes*, 570 N.W.2d 757, 759–60 (Iowa 1997), our supreme court discussed what is sufficient to constitute a "history of domestic abuse." The court held that "a 'history' is not necessarily established by a single documented incident", "[n]or does more than one minor incident automatically establish a 'history of domestic abuse.'"

**III. Discussion.**

On appeal, Danielle argues there was no substantial change in circumstances to warrant modification.[2] Danielle also argues even if there was a substantial change in circumstances, awarding Brian physical care of their daughter was not in the child's best interest. Finally, she asks that if Brian retains physical care of their daughter, she be provided more liberal visitation.

**A. Substantial Change in Circumstances.**

Our modification standards are well established:

A party seeking modification of a dissolution decree must establish by a preponderance of the evidence that there has been a substantial change in the circumstances of the parties since the entry of the decree or of any subsequent intervening proceeding that considered the situation of the parties upon application for the same relief.

*In re Marriage of Maher,* 596 N.W.2d 561, 564–65 (Iowa 1999). We find Danielle's contention that there was no substantial change in circumstance warranting modification to be disingenuous. At the outset of the trial, the court announced on the record the court's understanding that the parties agreed "that there was a substantial change of circumstances because both parties have moved." No objection to the court's statement is upon the record. Moreover, Danielle has failed to preserve error. "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). Because Danielle did not contest at trial, and indeed affirmatively alleged in her

---

[2] Initially appellant's brief acknowledges that the parties agreed there was a "change of circumstances." Later the brief challenges the existence of a substantial change of circumstances

counterclaim, the existence of a material and substantial change in circumstances in the district court, albeit on different grounds, we do not consider her contrary claim on appeal.

Even if Danielle had properly preserved error, because she moved from Spencer, Iowa, to Ames, Iowa, a distance of more than one hundred fifty miles, a substantial change in circumstances had occurred. *See* Iowa Code § 598.21D (2011) ("If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances."). Of course the fact that both Danielle and Brian moved is not justification in itself for a change of physical care. *See In re Marriage of Behn*, 416 N.W.2d 100, 101 (Iowa Ct. App. 1987) ("Where there is good reason for moving children in our highly mobile society a change in the custodial parent's geographic location is not justification in itself for change of custody").

**B. Burden to Establish a Change of Physical Care.**

The original stipulated decree provided that the parties shared physical care of their daughter. However, the arrangement was more typical of a custody agreement providing for physical care to Danielle with Brian having visitation on Wednesdays and every other weekend. Although Danielle has not raised on appeal the issue of the proper burden of proof, the burden of proof differs depending on whether we treat the custody arrangement as a joint physical care

arrangement or sole physical care with visitation. We think the district court applied the proper burden in stating:

> The parent seeking to change the physical care from a primary custodial parent to the petitioning parent has a heavy burden and must show the ability to offer superior care. *See In re Marriage of Michelson*, 299 N.W.2d 670, 671 (Iowa 1980); *In re Marriage of Mayfield*, 577 N.W.2d 872, 873 (Iowa Ct. App. 1998). The heavy burden stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983), *In re Marriage of Mikelson,* 299 N.W.2d 670, 671 (Iowa 1980). Also when one parent has primary care, that parent has been found to be the better parent. That is not the situation here, where in the decree they seek to modify the parents shared the physical and primary care of their daughter. The initial order splitting the child's time between her parents established that they both were suitable to be primary care parents. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368-69 (Iowa Ct. App. 2002); *see also Frederici*, 338 N.W.2d at 160 (finding either parent a suitable custodian a predicate to joint custody). Therefore in reviewing the evidence the court must decide who has shown she or he will be the better parent. *In re Marriage of Finch*, 755 N.W.2d 144, 144 (Iowa Ct. App. 2008).

### C. With Both Parents on Equal Footing, Who Can Provide Better Care?

As in any custody or care determination, our paramount concern is the best interest of the child. *In re Marriage of Bergman*, 466 N.W.2d 274, 275 (Iowa Ct. App. 1990).

Danielle maintains the evidence presented at the modification hearing does not support a finding that Brian can administer more effectively to B.H.'s needs. She also argues the modification is not in the best interest of the child. In support of this contention, Danielle argues B.H. is bonded with her half-siblings and that it was detrimental to separate her from them. She also argues the district court failed to properly consider B.H.'s need for stability and continuity in her caregiving.

Although there is a presumption that siblings, including half-siblings, should not be separated, that rule is not ironclad. *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). "[C]ircumstances may arise which demonstrate that separation may promote the long-range interest of [the child]." *In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992). We believe the compelling reasons to modify the custody arrangement in this case outweigh the presumption regarding siblings.

B.H. was diagnosed with attention deficit hyperactivity disorder and dyslexia in 2011. At the modification hearing, Brian testified he was concerned about whether Danielle was adequately supporting their daughter's education in light of her disorder. Part of this concern centered on the fact that Danielle and her children had moved several times. Although Brian estimated the number much higher, Danielle conceded she had moved six to nine times since the parties divorced in 2006.

Brian also presented evidence of B.H.'s excessive absences and tardiness. During the 2011-2012 school year, B.H. had nineteen excused absences, three unexcused absences, and was tardy forty-three times. Danielle testified that some of the forty-three instances were out of her control as they arose from B.H. not moving from classroom to classroom in a timely manner during the day. However, documentation from the school shows that at least forty-one of the times B.H. was tardy were a result of B.H. arriving late to school in the morning. Information from the school provided at the trial in May 2013 showed B.H. had also been absent seven and a half days and tardy twenty-two times up to that point in the 2012-13 school year. Rather than acknowledging the

problem or working on a solution, Danielle blamed B.H., who was nine years old at the time of the hearing, for her frequent tardiness.

Brian and Karissa testified they had contacted the local school about B.H. and had a plan for how to transport her to the local school each day. Karissa testified that although they had not made final plans yet, if Brian was awarded physical care of B.H., they could finalize them within one week. The district court explicitly found this testimony to be credible. *See Zabecki*, 389 N.W.2d at 398 ("Because trial court was present to listen and observe the witnesses, we give weight to its findings.").

Danielle maintains Brian's criminal past, involving arrests for domestic abuse assault and operating while intoxicated, are evidence he should not have been awarded physical care of B.H. We have stated "we believe evidence of untreated domestic battering should be given considerable weight in determining the primary caretaker, and under some circumstances even foreclose an award of primary care to a spouse who batters." *In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997). However, that is not the case before us. Since his arrest for domestic abuse assault in 2010, Brian has completed an anger management course and testified he has become involved in his church, where he has a strong support system and works on issues such as dealing with his anger. At trial, Brian acknowledged the mistakes he had made in the past but testified he had changed his lifestyle since then. His wife and mother both agreed.

We are concerned Danielle is not careful about the people she allows in her home and B.H.'s life. Evidence was presented that both of fathers of

Danielle's other two children are convicted felons. Danielle did not dispute the evidence, although she testified that she was not aware that one was a felon and the other "was out of [their] lives" as soon as she learned he was a felon. Furthermore, B.H. accused one of the fathers of "touching her pee pee." The matter was reported to DHS, and a child protective worker was scheduled to interview the child. The father was not supposed to have contact with B.H. until after the interview was completed, but he rode with Danielle and B.H. to the interview. Danielle did not deny these facts, but rather testified that no finding of abuse was made. Another concern is Danielle's sister who provides childcare and transportation for B.H. when Danielle is unable. Brian testified that DHS had removed the sister's own children from her care, and Danielle did not refute the testimony.

"[I]f a parent seeks to establish a home with another adult, that adult's background and his or her relationship with the [child] becomes a significant factor in a custody dispute." *In re Marriage of Decker*, 666 N.W.2d 175, 179 (Iowa Ct. App. 2003). Brian's wife, Karissa, testified about her desire for B.H. to live with them and about the things she had personally done to prepare for the modification in custody. As the district court recognized:

> Karissa works at a hospital near their home three twelve hour shifts a week and is taking classes in hope of becoming a registered nurse. It is clear she is in favor of her stepdaughter living in their home. She is concerned that the child is doing poorly in reading and has had a number of absences from school. She recognizes that if Brian receives primary physical care there will be adjustments to their life. . . . It was clear she cares for the child and finds her to be a good child but recognized there are moments and problems. Karissa's presence in Brian's home and her involvement in his life is a positive for him when considering custody issues.

Although continuity in caregiving and stability are important for children, in our de novo review we agree with the district court it is in B.H.'s best interest for Brian to be awarded sole physical care of B.H.  Brian has more stability in his residence, home-life, and employment, and he expresses a sincere concern in B.H.'s education.

**D. Visitation.**

Danielle asks that we modify the district court's order to award her more liberal visitation.  She argues it is in B.H.'s best interest to maintain maximum physical and emotional contact with both parents and her half-siblings.

Danielle's own argument, presented to the district court at the time of the modification hearing, was that the distance between the homes of the two parties is too great to make visitation every other weekend practicable. She now sings another tune as the parent without physical care.

Danielle's argument on appeal that alternating weekend visitation and one night weekly are required for "liberal visitation" is untenable when the child attends school during the week and the parties live more than 150 miles apart. Iowa Code section 598.21D provides in part:

> If the court determines that the relocation is a substantial change in circumstances, the court shall modify the custody order to, at a minimum, preserve, as nearly as possible, the existing relationship between the minor child and the nonrelocating parent. If modified, the order may include a provision for extended visitation during summer vacations and school breaks and scheduled telephone contact between the nonrelocating parent and the minor child. The modification may include a provision assigning the responsibility for transportation of the minor child for visitation purposes to either or both parents.

Our court has also stated that a parent's opportunity for maximum continuous physical and emotional contact with both parents, where a long distance relocation has occurred, "can be assured by means other than a traditional, alternating-weekends visitation schedule." *In re Marriage of Thielges,* 623 N.W.2d 232, 238 (Iowa Ct. App. 2000).

Danielle also contends the district court awarded more restrictive rights than Brian proposed. We have examined Brian's proposal and the order modifying child custody and we agree. Both parties are presently amenable to every other weekend visitation on the terms proposed by Brian, and each has a strong bond with the child. The child's continued liberal contact with both parents will benefit her. Although the travel every other weekend may not seem to be a major obstacle from the outset, B.H. is nine years old and over an extended period of time, in good weather and in bad, the transportation may become burdensome on the child and the parents. We trust Brian and Danielle will consider B.H.'s best interests and the need for accommodations for the child or either parent from time to time. Their cooperation and communication can help their child flourish.

Accordingly, it is in the best interests of the child to modify the district court's weekend, holiday, and special days visitation schedule to provide as follows:

> Danielle shall be permitted to exercise visitation every other weekend. The pickup and drop off time shall be 6:00 p.m. The parties shall share in the transportation for the visitation by meeting halfway in Adair, Iowa.

> Christmas break from school will be split 50-50. Every year, one parent will have the child from the beginning of Christmas break

through the evening of Christmas Day. The child will then be transported to the other parent for the remainder of Christmas break including New Years Eve and Day until school begins again. In even numbered years:

| Brian | Danielle |
|---|---|
| Christmas Eve/Day | New Years Eve/Day |
| Easter | Memorial Day |
| Labor Day | Fourth of July |
| Child's Birthday | Thanksgiving |

•In odd numbered years, the above schedule shall be reversed as to Brian and Danielle. Brian shall provide the child's care on each Father's day and his birthday. Danielle shall provide the child's care on each Mother's day and her birthday.

•The above schedule for weekend visitation and holiday and special days may be amended from time to time, upon mutual agreement of the parties, based upon the schedule of the parties and the needs, schedule and best interest of the minor child. The parties shall cooperate and make appropriate adjustments to the parenting time schedule as is reasonable. The holiday and special day visitation shall take priority over the regular weekend visitation.

We affirm the summer visitation provisions imposed by the district court.

**IV. Conclusion.**

Because there has been a substantial change in circumstances warranting modification and Brian proved he was able to more effectively meet the needs of the child, we affirm the district court's decision modifying physical care. We modify the visitations schedule to better meet the stated goal of liberal visitation. Costs on appeal are divided one-half to each party.

**AFFIRMED AS MODIFIED.**