# IN THE COURT OF APPEALS OF IOWA

No. 13-1928
Filed January 28, 2015

IN RE THE MARRIAGE OF NATHAN ALLEN LOGEMANN
AND KERSTEN ASHLEY LOGEMANN

Upon the Petition of
**NATHAN ALLEN LOGEMANN,**
　　　　Petitioner-Appellee,

And Concerning
**KERSTEN ASHLEY LOGEMANN,**
**n/k/a KERSTEN ASHLEY ABILD,**
　　　　Respondent-Appellant.

_____

　　　　Appeal from the Iowa District Court for Cass County, J.C. Irvin, Judge.


　　　　A mother appeals the district court's decision modifying a custody

arrangement. **AFFIRMED.**


　　　　Theodore R. Wonio of Cambridge Law Firm, P.L.C., Atlantic, for appellant.

　　　　Karen Atkinson Dales, Council Bluffs, for appellee.


　　　　Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

Kersten Abild appeals the district court's grant of her former husband Nathan Logemann's petition to modify the physical care provisions of a custodial arrangement regarding their two minor children. Kersten contends the district court erred in transferring physical care from Kersten to Nathan. She argues Nathan did not meet the heavy burden of showing there was a substantial and material change in circumstances to justify modification of the care provisions. For the reasons stated below, we affirm the decision of the district court.

## I.    BACKGROUND FACTS & PROCEEDINGS.

Kersten and Nathan are the parents of two minor children, C.L. and D.L. In 2008, the district court entered a decree dissolving their marriage. The decree awarded Kersten and Nathan joint legal custody and placed physical care with Kersten with liberal visitation for Nathan. The court ordered Nathan to pay child support to Kersten. Nathan has since remarried, and Kersten has been in a relationship with Cory Harter for over five years.

In 2009, Nathan filed an application to modify the child support order, which the court denied. In 2012, Kersten filed an application to modify the visitation provisions to reduce visitation. The court entered an order maintaining joint legal custody and physical care with Kersten, but inserted a number of provisions to assist the parents in cooperating in the children's care. Among these, the court ordered that neither parent would enroll the children in an activity without first consulting with and obtaining the approval of the other party. If one

party signs up the children for an activity without obtaining approval, the other parent is not responsible for that parent's portion of the related fees.

In March 2013, Kersten asked the court to review the modification order and reduce visitation as requested in her previous application to modify. Nathan filed a counter-application requesting physical care. The court granted Nathan's application and awarded him physical care with Kersten having visitation and paying child support to Nathan. Kersten filed an application for new trial and a motion to enlarge, modify, and amend. The court made minor changes to its order but maintained the modification it entered. Kersten now appeals the modification.

## II.     SCOPE AND STANDARD OF REVIEW.

Because an action to modify a custody decree is heard in equity, our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We give weight to the district court's findings of fact, especially with regard to witness credibility, but we are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992). Prior cases have little precedential value, as we must base our decision on the particular circumstances of the case before us. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). "The trial court has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity." *In re Marriage of Kern*, 408 N.W.2d 387, 389 (Iowa Ct. App. 1987).

## III. ANALYSIS.

### A. Modification of Physical Care.

Courts may modify the custody or care provisions of a decree only where the record reveals "a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child." *Melchiori*, 644 N.W.2d at 368. The burden is on the party seeking modification to show a substantial change by a preponderance of the evidence. *In re Marriage of Feustel*, 467 N.W.2d 261, 263 (Iowa 1991). In addition, the party seeking modification must demonstrate that he or she possesses a superior ability to minister to the needs of the children. *In re Marriage of Whalen*, 569 N.W.2d 626, 628 (Iowa Ct. App. 1997). Once a custodial arrangement is established, "it should be disturbed only for the most cogent reasons." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). As in any custody or care determination, our paramount concern is the best interests of the child. *See In re Marriage of Bergman*, 466 N.W.2d 274, 275 (Iowa Ct. App. 1990).

On appeal, Kersten contends Nathan did not meet the burden of showing there has been a substantial and material change in the circumstances to justify modification. Nathan contends that subsequent to their dissolution decree, Kersten's conduct with respect to the children and himself has created a substantial and material change in the custodial circumstances such that it is in the children's best interest to grant him physical care. Nathan asserts Kersten is unable to communicate or cooperate effectively with him to further the children's

care. He claims she does not inform him of the children's doctor appointments, subjects the children to excessive medical treatment, enrolls them in activities without consulting him, and withholds visitation from him.

At the modification hearing, the court heard testimony from, among others, Kersten, Nathan, and the guardian ad litem (GAL). Nathan testified to numerous occasions when Kersten withheld visitation from him in violation of the court order. In the summer of 2011, the parties had a two-week-on, two-week-off visitation schedule. Kersten refused to give the children to Nathan for the first two weeks of July because Nathan was late picking them up on the first day. She admitted she refused to give Nathan visitation on that occasion because she was angry at him. After a heated exchange, she also refused to give him the children for the first two weeks of August. On another occasion in 2009, she refused to give him the children because he had gotten temporarily behind in child support payments. Easter weekend of 2012, Kersten's brother was in town, and Kersten informed Nathan he would not get the children even though the decree stated he had visitation over the Easter holiday.

Exchanges of the children frequently involve Kersten yelling and screaming at Nathan in front of the children. Nathan made some audio recordings of these incidents. The GAL listened to some of these recordings and agreed that Kersten is the instigator of these exchanges. The GAL also reported Kersten was angry, combative, and abusive when the GAL attempted to contact her. The children reported to the GAL that Kersten says negative things about Nathan in front of them but they have not heard Nathan make similar statements.

Nathan also testified Kersten does not consult him or obtain his approval before enrolling the children in activities. He stated she usually only informs him afterward. Nathan also complained Kersten signs the children up for events and activities during his visitation time without informing him until immediately before they are scheduled. On one occasion Kersten's mother, who is often involved in caring for the children, signed one child up for golf; Kersten did not inform Nathan until afterward. Nathan also has had to cancel activities he planned during his visitation time because Kersten has enrolled the children in an activity without informing him. Kersten disagreed with Nathan's characterizations. She stated Nathan gets the same information in emails that she gets from Boy Scouts and other groups the children are involved in. She also stated she gives Nathan receipts of their fees from activities to inform him they are enrolled. Kersten believes Nathan does not talk to her about the children's activities because he does not want to pay for anything.

Nathan believes Kersten seeks excessive medical treatment for the children and does not involve him in medical decisions. D.L. has a number of medical issues including an as-yet undiagnosed metabolic disorder which causes him to have poor weight gain for his height and unstable blood sugar levels. A letter from a treating doctor indicates no specific diagnosis has been made. D.L. also has ADHD, Asperger Syndrome, and some developmental delays. Although Kersten has taken the children to numerous doctors for testing no doctor has given a specific diagnosis for D.L.'s metabolic issues.

Nathan testified that when he is aware of the children's doctor appointments he attends but Kersten often does not inform him when they are scheduled. Nathan testified he usually finds out about the children's appointments after they have taken place from medical providers, the insurer, teachers, and the children. Kersten occasionally informs him afterward about test results or what occurred at an appointment. Kersten testified she keeps Nathan aware of the appointments by text, telephone, and informing him in person. She produced a photograph of one text she sent Nathan informing him a doctor's appointment had been cancelled. Nathan later discovered she had rescheduled the appointment and did not inform him of the new date. On one occasion, it appeared that Kersten deliberately misled Nathan and his wife about taking the children to a doctor's appointment. Kersten asked Nathan to drop the children off at her house on a Monday morning instead of at school because they needed to pick up some things from her house. Nathan later discovered that instead of taking them to school, Kersten took the children to a doctor's appointment. With regard to these issues, the district court found Nathan's testimony was more credible than Kersten's.

Kersten's mother testified that she attends most of the children's doctor's appointments and was able to name seven or more doctors the children had seen throughout Iowa and in Omaha. Nathan was unaware the children had seen several of the named doctors and had never attended those appointments. Upon examining the children's medical records during the process of discovery, Nathan became aware for the first time of some of the medical concerns Kersten

has about the children, especially D.L. Kersten has reported symptoms and concerns to medical personnel that Nathan and his wife have never observed in the children while in their care. Nathan also became aware for the first time through discovery that C.L. was seeing a therapist twice monthly. Kersten has also told the children's school that D.L. has diabetes and enforced a strict routine and schedule for his snacks and meals. D.L. has never been diagnosed with diabetes, and the school eventually declined to follow the routine Kersten specified without medical documentation of his condition.

The GAL reported that both parents love the children, are close with them, believe they are acting in their best interests, and maintain appropriate homes where the children are well-cared for. She testified both parents can meet the children's needs, including special medical needs. However, she also reported that it was in the children's best interest to transfer physical care to Nathan. She reported:

> The children will maintain active and meaningful contact with both parents if in Nathan's care. I do believe that Kersten inhibits the relationship between the children and their father. . . . The parents are not able to effectively communicate at this time regarding the children's needs. They do not listen to each other or respect each other. . . . Kersten unilaterally makes decisions and does not include Nathan in the decisions. . . . There are major issues with the health and well-being of [D.L.]. It is very concerning to me that Kersten does not communicate with Nathan about the doctor's appointments or the results.

The GAL also testified she had originally planned to recommend a shared care arrangement, however, Kersten refused to talk with the GAL about it. This and her previous experience with Kersten convinced the GAL a shared care arrangement would be infeasible between these parents. The GAL considered a

number of factors including the children's best interests; their emotional, psychological, and mental well-being; the parents' ability to communicate and make decisions with each other; and the parents' ability to facilitate a relationship with the other. The GAL stated that the children were under constant stress and pressure from being between Kersten and Nathan and that this affects their mental health and emotional well-being.

Although Kersten challenged the inclusion of the GAL's report and testimony in the record based on various complaints about the GAL's investigations in this case, the district court specifically found the GAL

> [h]as done extensive work in this case. She has been in contact with professionals from both the children's schools. She has reviewed medical records, some of which the Court also has reviewed. There is no indication that she has acted unprofessionally or has been more predisposed to one parent over the other during her investigation. The Court find[s] [the GAL's] report and testimony helpful to the Court and relies upon it along with the other evidence presented in making its decision.

On our review of the record, we agree with the district court and will give deference to its credibility determinations. The court found Nathan's testimony was generally credible. Nathan blamed the communication issues on Kersten and the court agreed with him.

The court found "there has been a substantial and material change in circumstances that warrants the Court changing primary physical care of the children to Nathan with Kersten having reasonable and liberal rights of visitation." In so deciding the court found particularly significant the difficulties the parents have communicating, Kersten's withholding of visitation from Nathan, Kersten's failure to involve Nathan in the children's medical treatment, Kersten's failure to

obtain Nathan's approval of the children's activities, and Kersten's failure to promote the children's relationship with Nathan. The court also noted Kersten had not acted in the children's best interests.

Upon our de novo review, we agree with the district court that Nathan has met his burden to demonstrate there has been a substantial and material change in the circumstances. In cases where one parent has physical care, Iowa Code section 589.41(5)(b) (2015) provides:

> [T]he parent responsible for providing physical care shall support the other parent's relationship with the child. . . . Rights and responsibilities as joint legal custodian of the child include but are not limited to equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.

It is clear in this case Kersten has frustrated Nathan's right to equal participation in the children's medical care, education, and extracurricular activities. The more credible evidence was that she has not kept Nathan informed of their schedules, appointments, and events. We are particularly troubled by Kersten's failure to ensure Nathan has the opportunity to be an equal participant in the children's medical treatment. Clearly, the children have some special needs, particularly D.L. Nathan has a right not only to be informed of appointments and tests, but to have an equal hand in determining if and when they take place, and to provide doctors his own observations of the children's symptoms and his opinions of their needs. Kersten is very protective of the children but her conduct toward Nathan is inconsistent with her responsibilities as a joint legal custodian, and it is not in the children's best interest because it inhibits their relationship with their father. By withholding visitation, speaking negatively about Nathan in front of the

children, and failing to cooperate and coordinate care of the children with Nathan, she has demonstrated she is not able or willing to provide the necessary support for their relationship with Nathan. This is a substantial change that the court did not contemplate when it initially granted Kersten physical care. A preponderance of the evidence supports our finding of a substantial change in circumstances that justifies modification.

Having found there is a substantial change in circumstances, we must next determine whether Nathan has met the burden to show he can provide superior care. The evidence supports a finding that both parents are capable of caring for the children and meeting their needs. However, in considering what custody arrangement is in the best interest of the children, the court must weigh the factors set out under Iowa Code section 598.41(3). Relevant here are the questions of "[w]hether the parents can communicate with each other regarding the child[ren's] needs" and "[w]hether each parent can support the other parent's relationship with the child[ren]." *See* Iowa Code § 598.41(3)(c) and (e). The GAL reported that Nathan was more likely to support the children having active and meaningful contact with Kersten, but Kersten inhibits contact between the children and Nathan. We find the evidence supports this finding. The children report Kersten speaks negatively about Nathan outside his presence; Nathan reports Kersten is abusive to him when he picks up the children and in the presence of the children; and Kersten does not support Nathan's involvement in their activities and medical treatment. The children do not report that Nathan speaks negatively about Kersten in their presence. The GAL reported Nathan is

willing to have a shared physical arrangement, but Kersten does not want shared physical care and wants to reduce Nathan's visitation time. When writing the original decree in 2008, the district court could not have contemplated how Kersten's inability to communicate and cooperate with Nathan in the children's care could come to impact the children's relationship with Nathan and consequently their mental and emotional well-being. We believe this change in circumstances constitutes a cogent reason to modify the decree. Accordingly, we affirm the district court's modification of the custodial arrangement.

### B. Attorney Fees.

"Attorney fees are not a matter of right, but rest in the court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Factors the court considers include "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 43 (Iowa 1993)). We may also consider "whether the party making the request was obligated to defend the trial court's decision on appeal." *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa 1981). We award no attorney fees, and assess costs to Kersten.

## IV. CONCLUSION.

For the foregoing reasons, we affirm the district court's modification of the care provisions of the parties' custodial arrangement. We award no attorney fees and assess costs to Kersten.

**AFFIRMED.**