In re the MARRIAGE OF Diana Lynn ERICKSON and David Regan Erickson.

Upon the Petition of Diana Lynn ERICKSON, Appellant,

and Concerning David Regan Erickson, Appellee.

No. 91–1943.

Court of Appeals of Iowa.

Aug. 27, 1992.

B. Joan White of White & Zaffarano Law Offices, Ames, for appellant.

Robert W. Goodwin of Goodwin Law Office, Ames, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

HABHAB, Judge.

## FACTS

David and Diana Erickson were married in 1976 and divorced in 1984. The decree awarded the parties joint custody of their two children, Dana, now age twelve, and David John (D.J.), now age ten, with Diana having primary physical care. David was granted visitation on the second and fourth weekends of each month, every other Monday between 4:00 p.m. and 8:00 p.m., alternating holidays, and two weeks in the summer. The decree ordered David to pay $400 per month in child support.

In July 1985, David filed an application for modification of the decree to reduce the child support from $400 to $100 per month. The application was denied. In November 1988, David again filed an application for modification requesting visitation be changed to more than fifty percent of the time, with support reduced accordingly. David also sought a production of documents listing Diana's financial records. All motions were subsequently withdrawn.

In 1991, due to budget cutbacks and philosophical differences with her immediate supervisor, Diana's job with the Iowa State Center in Ames, Iowa, was in jeopardy. Diana applied for a similar job at the Five Flags Convention Center in Dubuque, Iowa, and was subsequently hired. The job with the Five Flags Convention Center offered an increased salary, greater job security, improved fringe benefits, and harmonious working relationships.

On July 25, 1991, David commenced the present action. Mediation was undertaken with the Center for Creative Justice in Ames, pursuant to a court order. On August 13, 1991, the parties ultimately signed a mediation agreement regarding the sale of the family residence and visitation. On August 14, 1991, David filed an application for change of custody.

Trial commenced on November 21, 1991. At trial, Diana testified her job as a backstage coordinator at the Iowa State Center sometimes required her to work late nights and early mornings when a large concert took place. During those times, Diana's mother watched the children. Diana explained that when she was hired for the new job in Dubuque, she visited the neighborhoods, schools, and community facilities

available to the children. She testified she made sure there were appropriate programs for D.J. because he had a learning disability and an attention deficient problem.

Diana testified that when the children first learned of the impending move to Dubuque they were excited and participated in the various activities surrounding the move. However, Diana maintained, after spending time with their father, the children became negative about the move and began stating they wanted to live in Ames with their father. Diana testified David was very negative about the move.

Diana argued she took an active part in the children's activities. She testified she obtained a divorce from David due to his excessive drinking and violent behavior towards her.

David is a recovering alcoholic. In May of 1983, when Diana filed for divorce and obtained an injunction against him, David started attending Alcoholics Anonymous (AA) and has not consumed any alcoholic beverages since then. David has never had any alcohol-related arrests or treatment. He has been married to Gale since 1986. He and Gale are both very active in AA and attend four to six meetings a week. Like David, Gale has never had an alcohol-related arrest or treatment.

David maintained the children would be his first priority. He argued Diana's job required her to be gone from the children a great deal of the time, and when she had free time she did not spend it with them. David testified Diana had left the children alone on occasion. He further stated Diana did not help the children with their homework, whereas he and his new wife frequently did. David also stated Diana often locked the children in their rooms, taping the doors shut, and used profane language in front of them.

The children testified they wanted to live with their father. They testified Diana rarely ate meals with them. They further complained Diana frequently yelled at them using profanity. They stated Diana would not help them with their homework. The children were also upset because Diana never included them in any of the numerous trips she took. The children additionally testified Diana often locked them in their rooms and taped the doors shut. Dana testified she wanted to run away from her mother but D.J. had told her not to.

The trial court ultimately determined, based upon all the testimony, a substantial change in circumstances had occurred and ordered the children be placed in David's physical care. The trial court determined David's net monthly income, for purposes of computing child support, was $1950. It also determined Diana's net monthly income, for purposes of computing child support, was $1950. The court then ordered Diana to pay David $585 per month in child support. The court awarded Diana visitation on the second Friday of each month until Sunday evening at 8:00 p.m., six weeks summer visitation, alternating holidays, spring break, and five days at Christmastime. It ordered each party to pay his or her own attorney fees. Diana has appealed. We affirm.

## SCOPE OF REVIEW

■ Our review in cases such as these is de novo. Iowa R.App. P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App. P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

## ANALYSIS

■ Modification of a dissolution decree is only allowed when there has been a material and substantial change in circumstances since the original decree. *Mears v. Mears,* 213 N.W.2d 511, 514–15 (Iowa 1973). "The trial court has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity." *In re Marriage of Kern,* 408 N.W.2d 387, 389 (Iowa App.1987)

(citing *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983)).

The principles enumerated in *Vetternack* and applied in *Kern* are applicable here as well:

A number of principles emerge from our cases: (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been in the contemplation of the trial court when the original decree was entered.

*Vetternack*, 334 N.W.2d at 762.

■ The district court found there had been material and substantial changes in circumstances which were not contemplated by the court when the decree was entered. From our de novo review, we agree the decree should be modified.

Furthermore, we adopt the following findings of the district court as our own:

The Court had lengthy visits with both children. They were bright and responsive. Their wishes and comments were quite similar. This can be argued that they had memorized or agreed upon their testimony. The length of the questioning and the nature of the questions is such that the Court does not accept that. It is more reasonable to believe that this is the wishes of both children and their reasons.

Both children stated that their mother did very little to help them with their schoolwork compared to what their father did when they were with their father. They said at times Diana explained that helping them at that time would interfere with her watching a TV program she wished to watch. Diana denied this. Her occupation is such that she tends to be occupied a number of eve-nings with her employment. The childrens' [sic] testimony and David's testimony does support their contention that David and Gale together help the children more with their school work than Diana does.... The children testified that they were with David approximately half the time while they lived in Ames, even though their mother was their physical caretaker.

\* \* \* \* \* \*

Most of the time that David spent with the children was quality time, in that he was active with the children or was seeing that they were involved in activities that were beneficial to them. There is little doubt that because of David's interest and activities, the children were involved in many beneficial activities that they otherwise would not have been.

The childrens' [sic] version is that while they lived in Ames, virtually all of their extra-curricular activities were focused around David and Gale, but Diana did participate somewhat. David and Gale regularly took the children to church or Sunday School on Sunday mornings and on Wednesday evenings for youth activities when they were old enough. David was regularly involved in Scouting activities with the children, particularly D.J. The same was true as to soccer and a variety of other extra-curricular activities.

\* \* \* \* \* \*

It is apparent that the children enjoy being with David and Gale and that there are many family activities, including riding a motorcycle or moped and going places together. David and Gale rarely ever employ anyone to take care of the children when they have the children. At least one of them adjusts their work schedule in the morning or afternoon or evening to be available, if both are not there. The children are more frequently with sitters or other persons ... when they are in the physical care of their mother.

\* \* \* \* \* \*

The childrens' [sic] wishes to live with their father predated Diana's job-related move. The move did cause the children to become more insistent.

The parties did know that the children were unhappy and wanted to be with their father prior to the move or the prospect of the move came up.

\* \* \* \* \* \*

Mr. Jahn [the children's attorney] ... believes that based upon the children's attitude, clearly the children are more emotionally close to their father. He is concerned about Dana's threat to run away if she can't live with her father. He feels that Diana's priorities are first her job, second her friends, and third, the children. He feels that David's first priority is the welfare of the children.

David has materially changed and no longer consumes alcohol. There is no evidence that he is now abusive or threatening to anyone. He does put the childrens' [sic] needs as his top priority.

\* \* \* \* \* \*

David can now more ably minister to the long-term needs of the children. He could not have done so at the time of the Decree. It is in the best interest of the children that they be in David's physical care.

(emphasis added).

## I. *Custody.*

■ In matters where it is claimed a change of circumstances since the entry of the dissolution decree justifies a transfer of custody, our first and governing concern is the best interests of the children. *Davis v. Davis,* 237 N.W.2d 455, 457 (Iowa 1976) (citations omitted). Custody of children who are receiving proper care should not be disturbed in the absence of cogent or compelling reasons. *Id.* at 458.

The non-custodial parent seeking a change in custody must prove an ability to minister more effectively than the custodial parent to the well being of the children; it is not enough to show they would be just as well off. [citations omitted] The specific question before us here, as it was before the trial court, is whether the non-custodial parent had established by a preponderance of evidence that conditions since the entry of the divorce decree had so materially and substantially changed that the best interests of the children made it expedient to award their custody to the ... [non-custodial parent].

*Id.* at 457. "A party seeking a change of custody must show a superior claim, based upon an ability to minister to the child's needs more effectively than the custodial parent." *In re Marriage of Ivins,* 308 N.W.2d 75, 78 (Iowa 1981) (citations omitted).

■ After hearing all of the evidence and assessing the credibility of the witnesses, the district court determined it was in the children's best interest to be placed in the parties' joint custody and in the father's physical care. It specifically found that David could best minister to the long-term needs of the children. We also note the children's testimony and the testimony of the children's attorney stating the children have a strong preference to live with their father. The child's stated preference is a factor to be considered by the court in determining custody arrangements; however, it is not controlling. Iowa Code § 598.41(3)(f) (1991); *In re Marriage of Udelhoffen,* 444 N.W.2d 473, 476 (Iowa 1989). We agree with the findings of the district court and hold there has been a material and substantial change in circumstances and it is in the best interest of the children for the parties to have joint custody and for David to have primary physical care of the children. We affirm the district court.

## II. *Child Support.*

■ Diana argues her child support obligation of $585 per month is excessive. We disagree.

■ It is well established that parents have a legal obligation to support their children. *In re Marriage of Fleener,* 247 N.W.2d 219, 221 (Iowa 1976). The amount of each parent's child support obligation should be determined in light of each par-

ent's ability to contribute. *See In re Marriage of Bornstein,* 359 N.W.2d 500, 504 (Iowa App.1984). Each parent's ability to contribute must be determined using the child support guidelines adopted by the Iowa Supreme Court. *See In re Marriage of Powell,* 474 N.W.2d 531, 533 (Iowa 1991). There is a rebuttable presumption the amount of child support which would result from the application of the guidelines is correct. *Id.*

The district court determined David and Diana each had a net monthly income of $1950 for purposes of computing child support. When these figures are applied to the child support guidelines, Diana's monthly child support payments should be $585, the precise amount ordered by the district court. We affirm the district court's award of child support. Diana's child support obligation remains at $585 per month.

### III. *Attorney Fees.*

Diana argues she should be awarded attorney fees for the district court action and for this appeal. We disagree.

Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles,* 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show that the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson,* 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig,* 318 N.W.2d 811, 817 (Iowa App. 1982).

An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App. 1981).

We are unable to conclude the district court abused its discretion in ordering each party to pay his or her own attorney fees and for David to pay attorney fees for the attorney appointed to represent the children. We affirm the district court. The parties shall pay his or her own attorney fees on appeal.

### CONCLUSION

After considering all issues presented, we affirm the district court. We determine any other issues the parties may have raised are without merit.

Costs of this appeal are taxed to the appellant.

AFFIRMED.

DONIELSON, J., concurs.

OXBERGER, C.J., dissents.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent. The following words of the supreme court in *In re Marriage of Mikelson,* 299 N.W.2d 670, 673 (Iowa 1980), apply equally in this case:

> (The noncustodial parent's) principal deficiencies appear to be his lack of support of (the custodial parent's) rights as custodial parent and his use of visitation as a device to wean the children away from their mother. (He) has treated custody as an open question even though it was settled in the decree terminating the marriage. This attitude has contributed to the hostility and mutual distrust which exists between (the parties). It has also placed the children in the midst of a tug-of-war for their loyalties. We have disapproved such conduct before (citations omitted). We now do so again.

I would do so again in this case. I would restore the custody of these children with the mother.