# IN THE COURT OF APPEALS OF IOWA

No. 15-0385
Filed April 27, 2016

ERIN KELLY GOETZ,
n/k/a ERIN KELLY RANDALL,
    Petitioner-Appellant,

vs.

RYAN LEE SISSON,
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Poweshiek County, Daniel P.

Wilson, Judge.


    Petitioner appeals the district court decision denying her request to modify

the physical care of the parties' child. **REVERSED AND REMANDED.**



    Kami L. Holmes, Grinnell, for appellant.

    Barbara A. Edmondson of Honohan, Epley, Braddock & Brenneman,

L.L.P., Iowa City, for appellee.



    Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Erin Goetz, now known as Erin Randall, appeals the district court decision denying her request to modify the physical care of the parties' child. She asks to have the child placed in her physical care, rather than in the physical care of Ryan Sisson. We determine there has been a substantial change of circumstances and the paternity decree should be modified to place the child in the physical care of Erin. We reverse the district court and remand for consideration of the issues of visitation and child support.

## I.    Background Facts & Proceedings

Ryan and Erin are the parents of a child born in 2006. The parents were never married, but lived together for a period of time. An order regarding custody, visitation, and support was entered on March 5, 2008, granting the parties joint legal custody and joint physical care of the child. At that time both of the parties lived in Grinnell, Iowa. Based on the parties' agreement no child support was ordered.

In January 2009, Erin moved to California, leaving the child in Ryan's care. Erin married Tim Rose, who was stationed in California for military service. Erin and Tim returned to Grinnell in July 2009, after Tim was discharged from the military. Eventually, Erin and Tim separated,[1] and Erin became homeless for a period of time. The custody order was modified by stipulation of the parties on October 18, 2010, to place the child in Ryan's physical care. The parties agreed Erin would have visitation on alternating weekends, overnight visitation on

---

[1] Erin and Tim were divorced in February 2014.

alternating Thursdays, alternating holidays, and two weeks of uninterrupted visitation time. Erin was ordered to pay child support.

Erin obtained stable housing in December 2010, which she continues to maintain. After she separated from Tim, Erin began a relationship with Richard Randall. In 2011, Richard pled guilty to a charge of disorderly conduct. On August 3, 2012, the Grinnell Police Department executed a search warrant at the trailer home of Erin and Richard. The officers found marijuana residue and a glass pipe. Richard pled guilty to a charge of possession of drug paraphernalia. Erin was not implicated.

Ryan began denying Erin visitation with the child on May 14, 2012, shortly after he prohibited telephone contact between the child and Erin. He stated he had concerns about the child's personal hygiene when she returned from visits with Erin. Erin filed an application for rule to show cause on September 5, 2012, claiming Ryan was violating the visitation provisions of the modified decree. In October 2012, Erin contacted the child's school and arranged to have lunch with the child once a week. Regular visitation resumed in November 2012. Ryan married Katie Sisson in 2012.

Ryan made several complaints against Erin and Richard with the Iowa Department of Human Services (DHS). Complaints were made in January, March, and November 2013. DHS investigated the complaints and determined they were unfounded.

On December 31, 2013, DHS issued a founded child abuse assessment against Ryan for striking the child with a belt. Ryan admitted to spanking the

child about six times with his hand, and then striking her in the buttocks with his belt, leaving a large, linear bruise. Ryan was charged with child endangerment based on this incident. On February 14, 2014, Ryan, Katie, and the child moved to Wellman, Iowa. Wellman is about seventy miles from Grinnell. Erin was notified of the move five days before it occurred. The school was unaware of the move until after it took place. Ryan pled guilty to the charge of child endangerment on March 10, 2014, and was placed on probation. Ryan and Katie voluntarily participated in services with DHS.

On April 1, 2014, Erin filed an application to modify the decree, asking to have the child placed in her physical care. The court denied her request for a temporary modification of the decree. On May 27, 2014, Ryan filed yet another complaint against Erin with DHS, claiming Erin had grabbed the child and left bruises on her hips. The report was unfounded by DHS. Erin agreed to DHS's request for a drug test, which was negative. Erin and Richard were married in June 2014.

Due to Ryan's continued belief the child had been physically and sexually abused, despite DHS investigations finding no evidence to support his claims, Ryan and Katie took the child to the University of Iowa Hospitals and Clinics in June 2014. Dr. Resmiye Oral evaluated the child and determined she was not being physically abused by Erin nor had she been sexually abused. Dr. Oral cautioned Ryan and Katie against coaching the child. Dr. Oral found the hostility between the parents was causing anxiety for the child. A hair drug screening test for the child was negative.

Ryan and Katie have reported problematic behavior by the child, including angry outbursts where she appeared to be unable to control herself. The child does not exhibit these behaviors with Erin. The child has been diagnosed with attention deficit hyperactivity disorder, oppositional defiant disorder, and adjustment disorder with anxiety. She has been placed on medication, although Erin believes medication may not be necessary. The child sees a therapist and does very well in school.

A modification hearing was held on January 14, 2015. Erin was then thirty-one years old. She lived in Grinnell with Richard, who was a truck driver. Erin was unemployed. She has Raynaud's disease, a circulatory condition, and has been informally diagnosed with bipolar disorder. Ryan was also thirty-one years old. He lived in Wellman with Katie and the child and was employed as a truck driver. Ryan was in good health.

Sarah Seney, the child's elementary school principal in Grinnell, testified the child had good academic performance and did not have behavior problems at school. She testified Ryan expressed displeasure when Erin ate lunch with the child at school and threatened legal action against the school. She stated Erin appeared to have a loving relationship with the child. Seney also testified the child's second-grade teacher, Elizabeth Malinowski, asked Seney to sit in on parent-teacher conferences with Ryan because Ryan had previously yelled at Malinowski. Seney testified, "I think that [the child] could easily live and be safe with Erin."

Malinowski testified the child shared some information about punishments at her house, where she lived with Ryan, and stated, "I was a little concerned that it was very extreme." Malinowski described an occasion she saw Ryan in the school office, stating, "He was very threatening . . . . I felt afraid. I mean, he literally got in my face, and I backed up into a corner." She stated the child observed this encounter. She testified the child told her bad things were being said about her mother at home, which caused the child to be very confused. Malinowski testified Erin's home would be a better place for the child to live.

Dawn Jordan, who was involved with Family Safety, Risk, and Permanency (FSRP) services, testified she worked with both Erin and Ryan. She stated Ryan told her many negative things about Erin, which turned out to be untrue, in front of the child. Jordan stated she had no concerns about Erin's parenting abilities, and saw no evidence of drug use in the home. She testified Ryan was sometimes overbearing and strict, while Erin was more nurturing. Jordan testified, "I feel that [the child] is more comfortable at Erin's home," and stated she believed Erin's home would be a better placement for the child.

Meagan See was employed by DHS and had investigated complaints concerning the child. See testified she believed it was detrimental to the child when Ryan denied visitation to Erin. She stated Katie told her they were "therapist shopping" to find a therapist for the child who would believe their concerns about sexual abuse. See also stated, "I was always very concerned about the negative statements that were told to [the child] about her mom by her dad and step-mom." See spoke to Ryan about this, but he was not receptive to

her concerns and "was very set in his belief system." She testified Ryan and Katie appeared to have a true dislike for Erin, and Ryan sometimes lacked insight into how his statements affected the child.

Jon Coon, who was a FSRP care coordinator, provided services for Ryan after he moved to Wellman. He stated he did not see any concerns in the home and recommended discontinuing services. Coon testified he did not have any concerns about the child's placement with Ryan.

The district court issued a ruling on February 5, 2015, denying Erin's request for modification. The court found Erin failed to show there had been a substantial change in circumstances since the decree was modified in October 2010, and she failed to show she could minister more effectively to the child's well-being. The court increased Erin's child support obligation to $145 per month. The court did not modify the visitation provisions of the decree. Erin appeals the decision of the district court.

## II.      Standard of Review

In this equity action, our review is de novo. Iowa R. App. P. 6.907. In equity cases, we give weight to the fact findings of the district court, especially on credibility issues, but we are not bound by the court's findings. Iowa R. App. P. 6.904(3)(g). We examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Ales*, 592 N.W.2d 698, 702 (Iowa Ct. App. 1999).

### III.     Modification of Physical Care

A party seeking to modify a physical care provision must show there has been a substantial change in circumstances since the time of the decree, not contemplated by the court at the time the decree was entered, which makes it in the child's best interests to modify the decree.  *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).  The change in circumstances must be more or less permanent and relate to the welfare of the child.  *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004).  A party seeking modification must also show an ability to minister more effectively to the child's well-being.  *In re Marriage of Thielges*, 623 N.W.2d 232, 235 (Iowa Ct. App. 2000).

"The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons."  *Frederici*, 338 N.W.2d at 158.  "The trial court has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity."  *In re Marriage of Erickson*, 491 N.W.2d 799, 802 (Iowa Ct. App. 1992).  Our analysis is the same whether the parents have been married, or remain unwed.  *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1998).

Upon our de novo review of the record, we determine there has been a substantial change in circumstances since the decree was modified on October 18, 2010.  The most substantial change is the founded report of physical abuse against Ryan for striking the child with a belt and his conviction for child endangerment based on the same incident.  *See In re Marriage of Burwinkel*,

426 N.W.2d 664, 665 (Iowa Ct. App. 1988) (finding an incident of excessive corporal punishment by a parent was a substantial change of circumstances). The child's behavioral problems are an additional change in circumstances, which have arisen, at least in part, due to the hostility between the parties. Although they would not be substantial changes in circumstances standing alone, we note Erin is now married to Richard, and Ryan is married to Katie, and Ryan, Katie, and the child moved to Wellman, which is about seventy miles from Grinnell.

On the issue of the parents' ability to minister to the child's well-being, we are particularly troubled because Ryan struck the child with a belt in December 2013, leaving a bruise which was visible several days later, and the incident resulted in a founded child abuse report and a conviction for child endangerment. Ryan had been advised against spanking the child. An October 30, 2012 medical report by Elizabeth Preston, a registered nurse practitioner, states, "It sounds like dad and stepmom do quite a bit of spanking and I really tried to discourage them from spanking her as a punishment for her hitting other kids. Talked about using time out."

In a modification action, one of the factors we consider is whether the custodial parent has supported the other parent's relationship with the child. *See In re Marriage of Leyda*, 355 N.W.2d 862, 865 (Iowa 1984). We are concerned with Ryan's continued statements to the child denigrating Erin. During the modification hearing Ryan admitted telling the child Erin did not take good care of her, she was not safe at Erin's home, and Erin used drugs. Erin stated Ryan

sometimes yelled at her in front of the child. Erin testified, "I believe that Ryan and Katie try to make [the child] think horrible things about me, and I think that it's very unfair to a small child." Malinowski, the child's former teacher, testified the child said Katie told her Erin was a bad mom, and this was very confusing for the child. Dr. Oral found the hostility between the parents was causing anxiety for the child. "In determining custody we can give great weight to a parent's attempt to alienate a child from her other parent if evidence establishes the actions will adversely affect a minor child." *In re Marriage of Winnike*, 497 N.W.2d 170, 174 (Iowa Ct. App. 1992).

Another concern is Ryan's decision to deny Erin visitation with the child for about six months in 2012. See, who was employed by DHS, testified she believed it was detrimental to the child when Ryan denied visitation to Erin. Regular visitation did not resume until after Erin filed an action seeking to have Ryan found in contempt of court. We have long recognized the need for a child to maintain a meaningful relationship with both parents. *Leyda*, 355 N.W.2d at 866. "If visitation rights of the noncustodial parent are jeopardized by the conduct of the custodial parent, such acts could provide an adequate ground for a change of custody." *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993).

We determine Erin has met her heavy burden to show she can minister more effectively to the child's well-being. The school employees and social workers who had worked with both Erin and Ryan all testified Erin's home provided a better environment for the child. While Coon testified he did not

believe there were any problems with Ryan's home, he did not provide any services to Erin. Erin stated she would facilitate a healthy relationship between the child and Ryan. Additionally, the child has not exhibited the same degree of behavioral problems in Erin's care as she has in Ryan's care.

We conclude the paternity decree should be modified to place the child in Erin's physical care. We remand to the district court for a determination on the issues of visitation and child support in light of our decision modifying physical care. The costs for this appeal are assessed to Ryan.

**REVERSED AND REMANDED.**