# IN THE COURT OF APPEALS OF IOWA

No. 16-0915
Filed October 26, 2016


IN RE THE MARRIAGE OF FRANCISCO GARCIA LOPEZ
AND ANNA CHRISTINA GARCIA LOPEZ

Upon the Petition of
FRANCISCO GARCIA LOPEZ,
        Petitioner-Appellee,

And Concerning
ANNA CHRISTINA GARCIA LOPEZ,
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Wright County, James M. Drew,

Judge.


        Respondent appeals from decree of dissolution of marriage, challenging

the award of physical care of the parties' child to her former spouse.  **AFFIRMED**

**AS MODIFIED AND REMANDED.**


        Eric R. Simonson of Houser, Berkland & Simonson, Belmond, for

appellant.

        Megan R. Rosenberg of Cady & Rosenberg Law Firm, P.L.C., Hampton,

for appellee.


        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**MCDONALD, Judge.**

Anna Garcia Lopez appeals from the decree dissolving her marriage to Francisco Garcia Lopez. On appeal, Anna challenges the district court's award of physical care of the parties' only child to Francisco. She contends physical care of the child should have been awarded to her with Francisco having liberal rights of visitation.

Our review of cases in equity is de novo. *See* Iowa R. App. P. 6.907. We review the entire record and decide anew the factual and legal issues presented. *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Prior cases have little precedential value; the court must make its determination based on the unique facts and circumstances of each case. *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995); *In re Marriage of Snowden*, No. 14-1920, 2015 WL 4233449, at *1 (Iowa Ct. App. Jul. 9, 2015) ("All happy families are alike; each unhappy family is unhappy in its own way." (quoting Leo Tolstoy, *Anna Karenina* 1 (1873))). We exercise de novo review with some deference afforded to the district court. *See In re P.C.*, No. 16-0893, 2016 WL 4379580, at *2 (Iowa Ct. App. Aug. 17, 2016).

Physical care is defined as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2015). In making the physical care determination, we look to the factors set forth in Iowa Code section 598.41(3) and our case law. *See* Iowa Code § 598.41(3); *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). "Each factor, however, does not necessarily impact the decision with equal force." *In re Marriage of Daniels*, 568 N.W.2d 51, 54 (Iowa Ct. App. 1997).

In considering the factors, our ultimate objective "is to place the child in the environment most likely to bring her to healthy mental, physical, and social maturity." *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). The controlling consideration is the best interests of the child. *See id.* at 736. Our court will "ultimately decide[ ] by determining under the whole record which parent can minister more effectively to the long-range best interests of the child[ ]." *Winter*, 223 N.W.2d at 166.

The parties were married in 2002. One child was born to the marriage, K.A.G., a daughter, in 2004. Over the course of the marriage, Francisco worked outside the home as the family breadwinner, and Anna worked as K.A.G.'s primary caretaker in addition to holding sporadic employment outside the home. The parties separated in the fall of 2014. For most of the period of their separation, the parties exercise shared care of K.A.G. on a week-on/week-off schedule. At the dissolution trial, Francisco requested shared physical care of K.A.G. or, in the alternative, primary physical care of the child. Anna requested primary physical care of K.A.G. The district court found shared physical care of K.A.G. was not feasible because Anna planned to move six or seven hours away from Belmond, the family's home, to central Missouri. Having found that shared physical care was not feasible, the district court awarded physical care of K.A.G. to Francisco. The district court reasoned Francisco could provide greater stability to K.A.G. The district court noted Francisco had stable employment, a stable residence, and a stable relationship with a woman he planned to marry. In contrast, the district court found Anna had only ephemeral plans to move to

Missouri and obtain employment post-dissolution. The district court also placed great weight on the fact Anna has been diagnosed with schizophrenia.

Unlike the district court, we place little, if any, weight on Anna's mental health history. While Anna has been hospitalized on two occasions, the record reflects that she has effectively managed her condition for the last several years with medication. *See Vanden Heuvel v. Vanden Heuvel*, 121 N.W.2d 216, 221 (Iowa 1963) ("Where the record does not bear out a finding that the mother of a small child is presently suffering from a mental disease, but does show she has been discharged from treatment of such a disease with symptoms under remission for a reasonable length of time, and shows no probability of a recurrence, the mother should not be deprived of the care and custody of her child for that reason."). Further, the parties' conduct over the course of their marriage and separation shows Anna has been a capable caretaker for K.A.G. despite her mental health condition. *See, e.g.*, *In re Marriage of Gibler*, No. 02-0010, 2002 WL 31313374, at *2 (Iowa Ct. App. Oct. 16, 2002).

We also conclude Anna's planned move to Missouri does not demonstrate instability or otherwise militate against awarding Anna physical care of K.A.G. Anna's planned move was not motivated by ill will toward Francisco. Anna's father and mother purchased a farm in central Missouri and intended to move there to work the farm and invest in real estate. Anna's extended family intended to move to Missouri in June 2016, after the school year ended, to help with the farm. Anna testified she intended to do the same because of the cultural importance of maintaining close relationships with extended family and because her extended family could provide support in raising K.A.G. The record reflects

Anna's extended family has played a significant role in helping raise K.A.G. during the course of the parties' marriage. Francisco testified about the critical role Anna's extended family played in providing assistance with the care of K.A.G. It thus comes as no surprise Anna wishes to continue these relationships post-dissolution.

On de novo review, we find and conclude it is in the child's best interests for Anna to have physical care of the child. First, approximation weighs heavily in favor of placing the child with Anna. *See In re Marriage of Hansen*, 733 N.W.2d 683, 697 (Iowa 2007) (discussing approximation principle). Anna, including her extended family, has been the child's caretaker over the course of the parties' fairly lengthy marriage. *See In re Marriage of Ford*, 563 N.W.2d 629, 633 (Iowa 1997) (considering parent's status as primary caregiver). The record reflects Anna was the parent who took the child to all medical and dental appointments. *See, e.g.*, *In re Marriage of Heitman*, No. 15-0631, 2016 WL 742816, at *5 (Iowa Ct. App. Feb. 24, 2016) (considering which parent arranges medical and dental appointments as a relevant factor). Anna attended all of the school conferences for the child. *See, e.g.*, *In re Marriage of Gerholdt*, No. 08-1572, 2009 WL 1492270, at *3 (Iowa Ct. App. May 29, 2009). Francisco attended his first school conference only after the parties' separation. Second, Anna will be able to minister more effectively to the child's needs. *See Winter*, 223 N.W.2d at 166. Both Anna and the child are bilingual—speaking Spanish and English. Francisco speaks only Spanish. He has not attended any medical or educational appointments for the child because of this language barrier. He testified he was largely unable to help K.A.G. with her school work because of

this language barrier. *See In re Marriage of Dickey*, No. 12-1393, 2013 WL 1453067, at *4 (Iowa Ct. App. Apr. 10, 2013) (considering parent's assistance with school work); *In re Marriage of Erickson*, 491 N.W.2d 799, 802 (Iowa Ct. App. 1992) (same). Beyond this, K.A.G. has a closer relationship with the mother. Third, Anna testified it was K.A.G.'s preference to move with Anna and her extended family rather than live with the father and his new girlfriend. *See McKee*, 785 N.W.2d at 738 (considering child's preferences). Francisco did not contradict this testimony, stating only that he had not discussed the issue with his daughter. Finally, we conclude Anna's proposed move to Missouri would not substantially disrupt K.A.G.'s support networks. *See In re Marriage of Vrban*, 359 N.W.2d 420, 425 (Iowa 1984) (noting "stability in the lives of young children can be nurtured as much by leaving them with the person who has been their primary parent figure as by requiring them to live in a neighborhood from which that person has moved"); *In re Marriage of Jerome*, 378 N.W.2d 302, 305–06 (Iowa Ct. App. 1985) (discussing our "mobile society"). The record reflects K.A.G. attends church but has few other extracurricular activities. She does spend a great deal of time with her extended family, and she would maintain the continuity of those relationships if placed with her mother. In contrast, the father's extended family resides in Mexico with the exception of two cousins at least one of who does not live in the area. Francisco has no support network of any note in the area to provide assistance with care of K.A.G. *See, e.g.*, *In re Marriage of Moyer*, No. 11-1695, 2012 WL 2412075, at *4 (Iowa Ct. App. June 27, 2012) (collecting cases discussing importance of proximity to support networks).

Both parties have requested appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007) (stating an award of appellate attorney fees is based upon the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal). We decline both requests for appellate attorney fees.

For the foregoing reasons, we affirm the judgment of the district court as modified and remand this matter for calculation of child support based on the current record and entry of an appropriate visitation schedule.

**AFFIRMED AS MODIFIED AND REMANDED.**